# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

|  |  |
|---|---|
| VIRTAMOVE, CORP,<br><br>            Plaintiff,<br><br>     v.<br><br>AMAZON.COM, INC.,<br>AMAZON.COM SERVICES LLC, and<br>AMAZON WEB SERVICES, INC.,<br><br>            Defendants. | Civil Action No. 7:24-cv-30-ADA-DTG<br><br>JURY TRIAL DEMANDED |

## <u>DEFENDANTS' MOTION TO DISMISS OR TRANSFER</u>

## TABLE OF CONTENTS

INTRODUCTION ------------------------------------------------------------------------------------ 1

FACTUAL BACKGROUND ------------------------------------------------------------------------- 2

    A.    Sun Microsystems Pioneered Containers in NDCA --------------------------------- 2

    B.    Others Created Technology Similar to Sun's Containers Around the
Same Time and Now Reside in NDCA ------------------------------------------------- 2

    C.    The Asserted Patents Originated in Canada --------------------------------------------- 3

    D.    Docker Developed the Accused Technology in NDCA ------------------------------- 3

    E.    The AWS Engineers Responsible for the Accused Services Are in
Seattle and NDCA ------------------------------------------------------------------------------ 4

        1.    ECS Witnesses Are Concentrated in Seattle. --------------------------------- 4

        2.    EMP Witnesses Are in Seattle and NDCA ----------------------------------- 5

    F.    Facilities in NDCA Host the Accused Services --------------------------------------- 5

    G.    The Sole VirtaMove Witness Identified in the Complaint Works in
NDCA------------------------------------------------------------------------------------------------- 5

    H.    VirtaMove Has No Justification For Suing in Midland ------------------------------- 6

ARGUMENT -------------------------------------------------------------------------------------------- 6

I.    Transfer to NDCA Is Warranted Under § 1406-------------------------------------------- 6

    A.    WDTX Is The Wrong Venue For This Case ------------------------------------------- 6

    B.    This Action Could Have Been Brought in NDCA ------------------------------------ 7

    C.    The Interest of Justice Favors Transfer to NDCA ------------------------------------- 8

II.    Transfer to NDCA Also Is Warranted Under § 1404 ------------------------------------- 8

    A.    The Private Interest Factors Favor Transfer------------------------------------------------ 9

        1.    Witness Convenience Favors Transfer------------------------------------------ 9

        2.    Availability of Compulsory Process Favors Transfer-----------------------11

   3.  Access to Sources of Proof Favors Transfer --------------------------------14

   4.  No Practical Problems Would Arise In NDCA ------------------------------15

  B.  The Public Interest Favors Transfer ------------------------------------------------16

   1.  NDCA's Record of Trying Patent Cases Favors Transfer -----------------16

   2.  NDCA Has a Strong Local Interest in this Case-----------------------------17

   3.  The Remaining Public Factors Are Neutral --------------------------------18

III. VirtaMove's Claims for Willful Infringement and Indirect Infringement Should
  Be Dismissed -------------------------------------------------------------------------------------18

  A.  VirtaMove Fails to Plausibly Allege Knowledge of the Asserted Patents --------19

  B.  VirtaMove Fails to Plausibly Allege Knowledge of Infringement-----------------20

CONCLUSION ------------------------------------------------------------------------------------------------20

# TABLE OF AUTHORITIES

*Cases:*                                                                 *Page(s):*

*In re Adobe Inc.*,
   823 Fed. App'x 929 (Fed. Cir. 2020).................................................................16

*Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*,
   6 F.4th 1283 (Fed. Cir. 2021) ......................................................................6

*In re Apple Inc.*,
   979 F.3d 1332 (Fed. Cir. 2020)................................................................9, 17, 18

*In re Apple, Inc.*,
   581 F. App'x. 886 (Fed. Cir. 2014) .........................................................11, 14

*BillJCo, LLC v. Apple Inc.*,
   583 F. Supp. 3d 769 (W.D. Tex. 2022)....................................................18

*BiTMICRO LLC v. Intel Corp.*,
   No. 6:22-cv-00335-ADA, 2023 WL 3855091 (W.D. Tex. 2023) .........................11

*Brooks & Baker, LLC v. Flambeau, Inc.*,
   No. 2:10-cv-146-TJW-CE, 2011 WL 4591905 (E.D. Tex. Sept. 30, 2011) ............8

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
   No. CIV.A. 11-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012)................19

*Core Optical Techs., LLC v. Nokia Corp.*,
   No. SACV1902190JAKRAOX, 2020 WL 6126285 (C.D. Cal. Oct. 8, 2020).......19

*CTD Networks, LLC v. Amazon.com, Inc.*,
   No. W-22-cv-01034-XR, 2023 WL 5281943 (W.D. Tex. Aug. 16, 2023)............20

*CTD Networks, LLC v. Google, LLC*,
   No. WA-22-CV-01042-XR, 2023 WL 5417139 (W.D. Tex. Aug. 22, 2023)........18

*Dali Wireless Inc v Corning Optical Commc'ns LLC*,
   638 F. Supp. 3d 1088 (N.D. Cal. 2022) ...................................................20

*Dynamic Data Techs. LLC v. Google LLC*,
   No. 19-1529, 2020 WL 1285852 (D. Del. March 18, 2020) .................................19

*EMA Electromechanics, Inc. v. Siemens Corp.*,
   No. 6:21-CV-1001-ADA, 2022 WL 1241967 (W.D. Tex. Apr. 26, 2022) .............7

*Flypsi, Inc. v. Google LLC*,
   No. 6:22-CV-0031-ADA, 2022 WL 3593053 (W.D. Tex. Aug. 22, 2022)............19

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009)...............................................................................11, 16

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)........................................................................................................18

*In re Google LLC*,
   58 F.4th 1379 (Fed. Cir. 2023) .......................................................................................8

*In re Google LLC*,
   No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ....................................9

*In re Google LLC*,
   No. 2022-140, 2022 WL 1613192 (Fed. Cir. May 23, 2022) ....................................15

*HD Silicon Sols. LLC v. Microchip Tech. Inc.*,
   No. W-20-CV-01092-ADA, 2021 WL 4953884 (W.D. Tex. Oct. 25, 2021).........................17

*Hills Point Indus. LLC v. Just Fur Love LLC*,
   No. CV 22-1256, 2023 WL 8804046 (D. Del. Dec. 20, 2023).................................20

*In re Honeywell Int'l Inc.*,
   No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024) ....................................15

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...................................11

*Intirion Corp. v. Coll. Prods.*,
   669 F. Supp. 3d 650 (W.D. Tex. 2023).........................................................................7

*In re Juniper Networks, Inc.*,
   14 F.4th 1313 (Fed. Cir. 2021) .............................................................9, 11, 14, 18

*LoganTree, LP v. Apple, Inc.*,
   No. 6:21-CV-00397-ADA, 2022 WL 1491097 (W.D. Tex. May 11, 2022) .........................14

*MemoryWeb, LLC v. Samsung Elecs. Co.*,
   No. W-21-CV-00411-ADA, 2022 WL 2195025 (W.D. Tex. June 17, 2022) .................12, 15

*Mobile Data Techs. LLC v. Meta Platforms, Inc.*,
   No. 7:22-cv-00244-ADA, 2023 WL 9051280 (W.D. Tex. Dec. 18, 2023).........................15

*Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*,
   No. 6:20-cv-008876-ADA, 2021 WL 3931910 (W.D. Tex. Sept. 1, 2021) ........................20

*In re Netflix, Inc.*,
   No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ....................................14

*In re: NetScout Sys., Inc.*,
   No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021)...................................................16

*Nuttall v. Juarez*,
   984 F. Supp. 2d 637 (N.D. Tex. 2013) ......................................................................................8

*In re Pandora Media, LLC*,
   No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021)...................................................14

*Safecast Ltd. v. Microsoft Corp.*,
   No. 6:22-cv-00983-ADA, 2023 WL 4356073 (W.D. Tex. July 5, 2023)..................................17

*In re Samsung Elecs. Co.*,
   2 F.4th 1371 (Fed. Cir. 2021) .......................................................................................11, 14, 17

*In re Samsung Elecs. Co., Ltd.*,
   No. 2023-146, 2023 WL 8642711 (Fed. Cir. Dec. 14, 2023)....................................................9

*Smart Mobile Techs. LLC v. Apple Inc.*,
   No. W-21-CV-00603-ADA, 2023 WL 5540152 (W.D. Tex. Aug. 28, 2023)....................16, 18

*Sonos, Inc. v. D&M Holdings Inc.*,
   No. CV 14-1330-WCB, 2017 WL 4969330 (D. Del. Nov. 1, 2017)........................................12

*Stamps.com Inc. v. Endicia, Inc.*,
   437 F. App'x 897 (Fed. Cir. 2011) .........................................................................................12

*In re TikTok, Inc.*,
   85 F.4th 352 (5th Cir. 2023) .............................................................................9, 11, 15, 17

*Valeant Pharms. N. Am. LLC v. Mylan Pharms., Inc.*,
   978 F.3d 1374 (Fed. Cir. 2020)................................................................................................7

*Varian Med. Sys., Inc. v. Elekta AB*,
   No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016)................................................19

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ..........................................................................................8, 18

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) (en banc) ................................................................................15

*Xiros, Ltd. v. Depuy Synthes Sales, Inc.*,
   No. W-21-CV-00681-ADA, 2022 WL 3592449 (W.D. Tex. Aug. 22, 2022).......................19

*XY, LLC v. Trans Ova Genetics, LC*,
   No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ..............................14

*ZitoVault, LLC v. Int'l Bus. Machines Corp.*,
    No. 3:16-CV-0962-M, 2018 WL 2971131 (N.D. Tex. Mar. 29, 2018) ...................................19

*Statutes and Rules:*

28 U.S.C. § 1400 ...................................................................................................................1, 6

28 U.S.C. § 1404 ...............................................................................................................1, 8, 20

28 U.S.C. § 1406 ..........................................................................................................1, 6, 8, 20

35 U.S.C. § 102 .......................................................................................................................12

35 U.S.C. § 103 .......................................................................................................................13

35 U.S.C. § 271 .......................................................................................................................18

Fed. R. Civ. P. 45(c)(1) ...........................................................................................................11

Local Rule CV-7(g) ...................................................................................................................6

**INTRODUCTION**

The Western District of Texas ("WDTX") is not a proper venue for this patent case because VirtaMove cannot satisfy the requirements of 28 U.S.C. § 1400(b) for two out of three Defendants. The allegedly infringing acts of which these two Defendants are accused occur in California and several other states, but not Texas. To cure this venue defect, Defendants (collectively, "Amazon") respectfully seek transfer to the Northern District of California ("NDCA") under 28 U.S.C. § 1406.

Transfer to NDCA is appropriate also as a matter of convenience under 28 U.S.C. § 1404. This case centers on technology developed in Silicon Valley, which is in NDCA. Specifically, VirtaMove's infringement claims rely on Amazon's use of industry-standard software for running computer applications in "containers." The purpose of containers is to isolate applications so they do not interfere with each other. But VirtaMove did not invent containers. By 2002, a Silicon Valley company called Sun Microsystems offered containers in its Solaris operating system. Sun's container technology is prior art that invalidates one of VirtaMove's asserted patents. The other patent is invalid in view of prior art from Sun and researchers at two California universities.

VirtaMove asserted these same two patents against Google in WDTX, along with IBM and HP Enterprise in East Texas. In all four cases, VirtaMove's infringement allegations rely on a newer container technology created by Docker, Inc., another third party based in Silicon Valley.

Because the accused technology and invalidating prior art were both developed in NDCA, a wealth of witnesses and evidence are located there. In contrast, this case has no ties to WDTX, much less Midland. VirtaMove is a Canadian corporation with no presence here or anywhere else in Texas. Thus, the interests of justice favor transfer to NDCA under both § 1406 and § 1404.

Additionally, Amazon moves to dismiss VirtaMove's claims for willful and indirect infringement. Amazon previously moved to dismiss these claims because VirtaMove's complaint failed to plausibly allege knowledge of infringement. VirtaMove responded by amending its complaint, but the amended complaint still fails to plausibly allege the requisite knowledge.

**FACTUAL BACKGROUND**

VirtaMove claims to be "an innovator and pioneer in containerization." (Dkt. No. 23 at ¶ 3.) The complaint extols the technical benefits and monetary value of containers, but it fails to acknowledge that VirtaMove did not invent them. (*Id.* at ¶¶ 3, 5.)

###### A.   Sun Microsystems Pioneered Containers in NDCA.

Sun Microsystems was founded by Stanford University graduate students in 1982. (Ex. 1 at 5-6.) Over the next two decades, Sun became "a leading provider of industrial-strength hardware, software, and services," selling in over 170 countries. (Ex. 2 at 5.) In 2002, Sun introduced "software containers" with version 9 of its Solaris operating system. (*Id.* at 2-3 ("Containers: Allows customers to run multiple applications on a single server, with fault, security and resource containment built-in.").) At that time, Sun was based in Santa Clara, California. (*Id.*)

Sun released an enhanced container technology called "zones" in the next edition of Solaris. (Ex. 3 at 1; Ex. 4 at 4-5.) Sun filed a provisional patent application on zones in May 2003. (Ex. 5 at PG-13, PG-104 ("A zone is an application container ....").) Sun also filed a non-provisional application in January 2004, which led to a patent issued in 2008. (Ex. 6 at 1.) The Sun patent names six inventors. (*Id.*) Three of these inventors—Andrew Tucker, John Beck, and Daniel Price—remain in NDCA. (Exs. 7-9.) None of the named inventors are in Texas. (Exs. 66-68.)

###### B.   Others Created Technology Similar to Sun's Containers Around the Same Time and Now Reside in NDCA.

The same year that Sun introduced "containers" in Solaris, researchers at Columbia University presented a software system called "Zap" that isolated applications by placing them in containers called "pods." (Ex. 10.) Their 2002 research paper names four authors. (Ex. 11.) Two of them, Steven Osman and Dinesh Subhraveti, now work in NDCA. (Ex. 12, Ex. 13.) Osman was the lead author. None of the authors are in Texas. (Ex. 14 (New York), Ex. 15 (same).)

### C.     The Asserted Patents Originated in Canada.

VirtaMove's asserted patents originally belonged to Trigence Corp.  (Ex. 16.)  Trigence was a Canadian corporation headquartered in Ottawa, Ontario, Canada.  (Ex. 17 at 2.)  Ottawa is over 1600 miles from Midland.  (Ex. 18.)

VirtaMove is also based in Canada.  (Ex. 19.)  VirtaMove does not claim that it or its predecessors ever had any place of business in Texas.  (*See* Dkt. No. 23 at ¶¶ 2-4.)  Nor does VirtaMove allege that it has any other ties to Texas, let alone to Midland.  (*See id*.)

Named inventors Paul O'Leary and Dean Huffman are in Ottawa.  (Ex. 20; Ex. 21.)  Inventor Donn Rochette is near Dayton, Ohio (Ex. 22)—over 1100 miles from Midland (Ex. 23).

### D.     Docker Developed the Accused Technology in NDCA.

VirtaMove's infringement allegations rest on container software developed by Docker, Inc. (*See* Dkt. No. 23 at ¶ 25 (citing Docker discussion in Amazon document); Dkt. No. 23-4 at [1pre], [1c], [1d], [1e], [1f] (alleging that Docker features satisfy claim limitations).)  Docker is based in Palo Alto, California.  (Ex. 24 at 4.)  The founder of Docker is Solomon Hykes.  (Ex. 25.)  Hykes publicly demonstrated Docker's container technology at a conference in NDCA in 2013.  (Ex. 26; Ex. 27.)  Hykes is still in NDCA.  (Ex. 28.)

By 2014, numerous companies including Amazon Web Services ("AWS"), Google, IBM, Microsoft, and many others had partnered with Docker to integrate its container technology into their cloud computing platforms.  (Ex. 29 at 2.)  In 2017, Docker donated the core of its container technology—*containerd*—to the Cloud Native Computing Foundation ("CNCF"), based in San Francisco.  (Ex. 30; Ex. 31 at 2.)  AWS, Google, and IBM have now adopted *containerd* to power container-based services that they offer to their cloud computing customers.  (Ex. 32.)

VirtaMove's infringement allegations specifically implicate Docker's functionality that provides a "writable container layer" for each container that is created from the same underlying template (called an "image").  (*E.g.*, Dkt. No. 23-4 at 6, 8, 9, 12.)  The Docker engineer responsible

for this functionality is Derek McGowan.  (Estes Decl. ¶ 4.)  McGowan is part of the core team responsible for *containerd* as well (Ex. 33), and he is near Sacramento, California (Ex. 34).

VirtaMove's infringement allegations also implicate Docker's functionality for creating a "base image."  (*E.g.*, Dkt. No. 23-4 at 4-5.)  Base images are created using a component called BuildKit.  (Estes Decl. ¶ 3.)  The Docker engineer responsible for BuildKit is Tonis Tiigi.  (*Id.* at ¶ 4.)  Mr. Tiigi is in San Francisco, California.  (Ex. 35.)

### E.   The AWS Engineers Responsible for the Accused Services Are in Seattle and NDCA.

VirtaMove accuses AWS of infringing Patent Nos. 7,519,814 and 7,784,058, which relate to software containers.  (Dkt. 23 ¶¶ 13, 15, 25.)  The allegedly infringing AWS products are Elastic Container Service ("ECS") and End-of-Support Migration Program ("EMP").  (*Id.* ¶¶ 15, 25.)

VirtaMove appears to accuse Amazon.com, Inc. and Amazon Services LLC of infringing only the '058 patent.  (*Id.* ¶¶ 26-27 (under "Count II").)  The allegations against these defendants rely on their alleged use of ECS to host "Amazon Prime Video" on "Fire TV" devices.  (*Id.*)

### 1.   ECS Witnesses Are Concentrated in Seattle.

Witnesses involved with ECS specifically (as opposed to underlying Docker or *containerd* functionality) are concentrated in Seattle, where AWS has over 100 employees working on ECS.  (Lannér Decl. ¶ 6.)  For example, Director of Software Development Mats Lannér supervises the development of ECS and works in Seattle.  (*Id.* ¶¶ 1-3.)  These Seattle-based AWS employees are responsible for the technology that ECS uses to run containers.  (*Id.* ¶ 6.)[1]

Regarding the use of ECS to host Prime Video, the complaint cites a case study involving Amazon engineers Sanket Patel, Brent Marieb, and Hani Suleiman.  (Dkt. No. 23 at ¶ 26; Ex. 36 at 3-4.)  Patel is in NDCA; Marieb is in Seattle; and Suleiman is in New York.  (Exs. 37-39.)

---

[1] AWS has some employees in Austin who worked on ancillary features of ECS, but none of them contributed to the technology that runs containers.  (Lannér Decl. ¶¶ 7-8.)  The few Austin employees who worked on ancillary ECS features will be relocating out of Texas this year.  (*Id.*)

2.      **EMP Witnesses Are in Seattle and NDCA.**

VirtaMove's allegations against EMP, in contrast to ECS, do not rely on Docker.  The EMP team at AWS is separate from the ECS team.   The team responsible for EMP reports to Ramu Panayappan, a Director of Engineering at AWS in Santa Clara, California.  (Panayappan Decl. ¶ 2.)  The following AWS employees have access to the source code for EMP: (1) Raviprasad Mummidi – Principal Software Engineer (Santa Clara); (2) Saikat Banerjee – Software Development Manager (Seattle); (3) Anushka Srinivasa – Software Development Engineer (Seattle); (4) PJ Pittle – Sr. Software Development Engineer (Seattle); (5) Arturo Molina - Software Development Engineer (Wisconsin); (6) Beau Gosse – Sr. Software Engineer (Wisconsin).  (*Id.* ¶ 4.)

A separate team previously responsible for EMP was based in England.  (*Id.* ¶ 5.)  That team joined AWS from Cloudhouse Technologies, a company in London.  (*Id.*)  But no members of that team remain at AWS.  (*Id.*)  Thus, AWS cannot make them available to testify here.

Two additional AWS employees have relevant knowledge concerning the design of EMP because they were tasked with evaluating the design before AWS launched the service.  They are:

1.  Biroj Nayak – Senior Software Development Engineer (Santa Clara, CA)

2.  Koushik Rajagopal – Senior Software Development Engineer (Santa Clara, CA)

(*Id.* ¶ 6.)  No Amazon engineers who work on EMP are based in Texas.  (*Id.* ¶ 7.)

F.      **Facilities in NDCA Host the Accused Services.**

VirtaMove's allegations against Amazon.com, Inc. and Amazon Services LLC rely on those defendants' alleged use of ECS together with a service called "Fargate."  (Dkt. 23 ¶¶ 26-27.) ECS on Fargate is hosted in Northern California, Oregon, Ohio, and Virginia.  (Ex. 40 at 1.)  It is not, and has not been, hosted in Texas.  (Lannér Decl. ¶ 5.)

G.      **The Sole VirtaMove Witness Identified in the Complaint Works in NDCA.**

VirtaMove's amended complaint alleges that a former VirtaMove representative named

Greg O'Connor met with AWS.  (Dkt. 23 ¶ 12.)  O'Connor was the CEO of Appzero, which became Virtamove.  (*Id.* ¶ 2; Ex. 41.)  O'Connor now works in San Francisco.  (Ex. 41.)

### H.      VirtaMove Has No Justification For Suing in Midland.

On May 29, 2024, Amazon's counsel conferred with VirtaMove's counsel in good faith concerning this transfer request pursuant to Local Rule CV-7(g).  VirtaMove's counsel stated that VirtaMove would oppose the motion because travel to NDCA would inconvenience VirtaMove personnel in Canada.  VirtaMove identified no witnesses, evidence, or local interest in Midland.

### ARGUMENT

### I.      TRANSFER TO NDCA IS WARRANTED UNDER § 1406.

When a case is filed in the wrong venue, a district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Here, transfer to NDCA is appropriate because this case could have been brought in that district and proceeding there would be in the interest of justice.  But if the Court declines to transfer, the claims against two defendants—Amazon.com, Inc. and Amazon.com Services LLC—must be dismissed because WDTX is an improper venue for these claims.

### A.      WDTX Is The Wrong Venue For This Case.

 Venue is proper in a patent infringement case only "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  The plaintiff bears the burden to show that venue is proper as to *each* defendant.  *Andra Grp., LP v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1285-87 (Fed. Cir. 2021).  If a venue is improper for some defendants, dismissal of those defendants is warranted.  *Id.*

Here, VirtaMove does not allege that any defendant resides in WDTX.  Rather, VirtaMove alleges that "Amazon has a regular and established place of business" in Austin and has committed "acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents."  (Dkt. 23 ¶¶ 10-11.)  However, VirtaMove identifies

no infringing product that was allegedly sold, offered for sale, or imported in WDTX.  Nor does VirtaMove specify which of the three defendants that it collectively calls "Amazon" allegedly committed infringing acts in WDTX.

Importantly, the infringement allegations in the amended complaint confirm that venue is improper in WDTX for two of the three defendants (Amazon.com, Inc. and Amazon Services LLC).  For those defendants, VirtaMove's allegations expressly rely on "Fargate"—which is hosted only outside of Texas.  (*Supra*, p. 5.)  Thus, VirtaMove cannot show that those defendants' alleged infringement occurred here.  *See Valeant Pharms. N. Am. LLC v. Mylan Pharms., Inc.*, 978 F.3d 1374, 1378-79 (Fed. Cir. 2020) (venue improper where alleged infringement occurred outside the district); *EMA Electromechanics, Inc. v. Siemens Corp.*, No. 6:21-CV-1001-ADA, 2022 WL 1241967, at *7-8 (W.D. Tex. Apr. 26, 2022) (plaintiffs bear the burden "when the defendant attacks venue by arguing that an allegedly infringing act did not occur within the forum district").

Any argument that infringement occurs in WDTX because Prime Video is sold here would be meritless.  VirtaMove's complaint does not allege that merely selling *a subscription to* Prime Video infringes.  Only the *hosting* of one specific Prime Video app (for Fire TV) is alleged to infringe—because that hosting is where ECS on Fargate is allegedly used.  (Dkt. 23 ¶¶ 26-27.) Because the allegedly infringing acts of Amazon.com, Inc. and Amazon Services LLC occurred outside WDTX, this is the wrong venue.  *Intirion Corp. v. Coll. Prods.,* 669 F. Supp. 3d 650, 655-56 (W.D. Tex. 2023) (transferring where alleged infringement occurred outside WDTX).

### B.    This Action Could Have Been Brought in NDCA.

Amazon has many offices in NDCA, including where employees responsible for EMP and ECS work.  (Lannér Decl. ¶ 3; Panayappan Decl. ¶¶ 1, 4.)  Amazon has also committed allegedly infringing acts in NDCA, e.g., making and using EMP and ECS (including Fargate).  (Dkt. 23 ¶¶ 15, 25; Lannér Decl. ¶ 4; Panayappan Decl. ¶ 3.)  Thus, VirtaMove could have sued in NDCA.

### C.      The Interest of Justice Favors Transfer to NDCA.

If VirtaMove's claims against Amazon.com, Inc. and Amazon.com Services LLC were dismissed, VirtaMove could refile them elsewhere.  If claims against AWS remained in WDTX, then multiple closely related cases would proceed in different districts.  Such piecemeal litigation would lead to duplication of effort and potentially inconsistent rulings.  Transferring this entire case to NDCA would avoid these problems.  *See Nuttall v. Juarez*, 984 F. Supp. 2d 637, 647 n.5 (N.D. Tex. 2013) ("Even if Plaintiff could establish that venue is proper in this district as to one or more of his claims, the district Court should still transfer the entire case … to avoid piecemeal adjudication").  Further, NDCA has many other convenience advantages explained below in connection with § 1404.  *See Brooks & Baker, LLC v. Flambeau, Inc.*, Case No. 2:10-cv-146-TJW-CE, 2011 WL 4591905, at *6 (E.D. Tex. Sept. 30, 2011) (considering § 1404 convenience factors when applying § 1406).  Thus, transfer to NDCA under § 1406 would be in the interest of justice.

## II.      TRANSFER TO NDCA ALSO IS WARRANTED UNDER § 1404.

 "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The court should grant transfer when a movant demonstrates that the transferee venue is clearly more convenient.  *In re Google LLC*, 58 F.4th 1379, 1382 (Fed. Cir. 2023) (citing *In re Planned Parenthood Fed'n. of Am., Inc.*, 52 F.4th 625, 629 (5th Cir. 2022), and *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")).

A threshold issue is whether the complaint could have been filed in the transferee district.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  If so, courts consider private and public interest factors relating to the convenience of parties and witnesses, as well as the interests of the judicial districts in hearing the case.  *Google*, 58 F.4th at 1382.

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of non-party witnesses whose attendance may need to be compelled by court order; (3) the relative convenience of the two forums for potential witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1316-17 (Fed. Cir. 2021).

The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having disputes regarding activities occurring principally within a particular district decided in that forum; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* at 1317.  When some factors favor transfer and no factors weigh against transfer, a transfer motion should be granted. *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023); *In re Samsung Elecs. Co., Ltd.*, No. 2023-146, 2023 WL 8642711, at *3 (Fed. Cir. Dec. 14, 2023).

### A.      The Private Interest Factors Favor Transfer.

#### 1.      Witness Convenience Favors Transfer.

"[T]he relative convenience for and cost of attendance of witnesses between the two forums is 'probably the single most important factor in transfer analysis.'" *Juniper Networks*, 14 F.4th at 1318 (quoting *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)); *In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020).  "[W]hen there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) (per curiam).

Relevant Amazon employees are concentrated in NDCA and Seattle.  The team responsible for EMP includes a director and an engineer in NDCA and three engineers in Seattle, while no team member works in Texas.  (*Supra*, p. 5.)  Two other engineers outside of this team have relevant knowledge about EMP's design and are also in NDCA.  (*Id.*)  As for the ECS team, over 100

engineers are in Seattle, along with Director of Software Development, Mats Lannér.  (*Supra*, p. 4.)  These Seattle-based engineers are responsible for the technology ECS uses to run containers. (*Id.*)  No employees in WDTX have contributed to this technology.  (*Id.*)

Any trial in this case would require testimony from both ECS and EMP engineers.  Because these engineers are in NDCA and Seattle, travel to Midland would substantially burden them.  NDCA would be far less burdensome.

NDCA would also be less burdensome for Amazon's marketing and finance employees responsible for the accused services, to the extent any such employees testify at trial.  These marketing and finance employees are overwhelmingly concentrated in California and Seattle.  (Lannér Decl. ¶ 11 (ECS); Exs. 69-72 (EMP).)

From Seattle, NDCA is far more convenient than Midland.  Many direct flights operate daily between Seattle and San Francisco, Oakland, and San Jose.  These flights are only two hours. (Ex. 42.)  No direct flights from Seattle to Midland exist, and the trip requires six to nine hours. (Ex. 43; Ex. 44.)  NDCA would also be more convenient for Amazon's employees because they could work in Amazon's NDCA offices while waiting to testify.  (*E.g.*, Ex. 45.)  No such convenience is available in Midland because Amazon's Austin offices are five hours away.  (Ex. 46.)

NDCA would also be more convenient for VirtaMove's employees and the inventors in Ottawa (if they were to testify).  Travel from Ottawa to NDCA requires two flights. (Ex. 47.) Travel from Ottawa to Midland requires an extra flight and additional travel time.  (Ex. 48.)

The third named inventor is in Dayton, Ohio.  Non-stop flights are available from Cincinnati and Columbus (both near Dayton) to San Francisco—but not to Midland.  (Ex. 49 at 1, 2.)

Some non-party witnesses based in NDCA may also be willing to testify, and doing so in their home district will be far more convenient than traveling to Midland.  Dinesh Subhraveti, co-author of the "pods" prior art, has informed Amazon's counsel that he is "open to testifying" in

this case.  (Anapol Decl. ¶ 75.)  Dr. Subhraveti resides in NDCA.  (Ex. 13.)  And Robert Gingell, a former Sun Microsystems engineer, also informed Amazon's counsel that he is willing to testify. (Anapol Decl. ¶ 76.)[2]  Mr. Gingell resides in NDCA as well.  (Ex. 56.)

VirtaMove has identified no party witnesses in Texas, let alone in Midland.  "Even if not all witnesses testify, with nothing on the other side of the ledger, the [witness convenience] factor strongly favors transfer."  *In re Samsung Elecs. Co*., 2 F.4th 1371, 1379 (Fed. Cir. 2021); *see also Juniper Networks*, 14 F.4th at 1319; *Genentech*, 566 F.3d at 1345; *BiTMICRO LLC v. Intel Corp.*, No. 6:22-cv-00335-ADA, 2023 WL 3855091, at *2-*4 (W.D. Tex. 2023).

### 2.    Availability of Compulsory Process Favors Transfer.

The availability of compulsory process to secure the attendance of third-party witnesses "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue[.]"  *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014); *TikTok*, 85 F.4th at 360.  A third-party witness may be compelled to attend trial in the state, or within 100 miles of, where the person "resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1).

Third-party witnesses impact the transfer analysis if they have "relevant and material information" concerning the litigation.  *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021).  Below, Amazon identifies ten such third-party witnesses in NDCA— none of whom have agreed to testify willingly.  (Anapol Decl. ¶¶ 74, 76, 77.)

First, Docker's founder (Hykes) and two Docker developers responsible for the accused features (McGowan and Tiigi) are in NDCA, where Docker is headquartered.  (*Supra*, pp. 3-4.) These three witnesses have relevant and material information pertaining to non-infringement.  (*Id.*) More broadly, Docker's presence in NDCA suggests that additional relevant employees are there

---

[2] Mr. Gingell's testimony will be relevant to show that asserted claim 1 of the '058 patent would have been obvious.  The claim requires that user-level code is stored in a "shared library." Mr. Gingell led a team at Sun that disclosed and commercialized methods for storing user-level code in shared libraries years before the '058 patent.  (Ex. 54 at 36, 37, 43; Ex. 55.)

also. *MemoryWeb, LLC v. Samsung Elecs. Co.*, No. W-21-CV-00411-ADA, 2022 WL 2195025, at *4-*5 (W.D. Tex. June 17, 2022). These witnesses are especially important because they are responsible for the ECS functionality on which VirtaMove's infringement allegations rely. (*Supra*, p. 3.)

Second, three inventors of Sun Microsystem's prior-art container technology are in NDCA—including the lead inventor, Andrew Tucker. (*Supra*, p. 2.) The testimony of these inventors will be relevant and material to the invalidity of the asserted '814 patent. Specifically, the Sun inventors' testimony will be relevant to show that they conceived and reduced their prior-art invention to practice *before* filing their patent application. This testimony will show that the Sun invention qualifies as prior art under two different provisions of the Patent Act that each support Amazon's defense in different ways and require distinct elements of proof. Specifically, while the Sun patent facially qualifies as prior art under 35 U.S.C. § 102(e), the foregoing testimony from the Sun inventors will establish their technology as prior art under § 102(g) also.[3] This showing under § 102(g) will prevent VirtaMove from circumventing the prior art by "swearing behind" the Sun patent. *See generally Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 907 (Fed. Cir. 2011) (explaining how a patentee may "swear behind an earlier patent."); *Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 4969330, at *6 (D. Del. Nov. 1, 2017) (Bryson, J.) (explaining the showing required for § 102(g) and contrasting it from the § 102(e) showing).

Third, Steven Osman—lead author of the "pods" prior art—is in NDCA. (*Supra*, p. 2.) Osman's testimony will be relevant and material to the invalidity of both asserted patents. Osman's prior art is especially relevant to the asserted '814 patent because VirtaMove is asserting that patent against EMP, which is a service for *migrating* applications from one computer to another. (Dkt. No. 23 at ¶ 15.) Osman's prior art likewise focused on the use of pods for "transparent

---

[3] References to § 102 are to the version that preceded the passage of the America Invents Act ("AIA"). The pre-AIA statute governs here because the asserted patents predate the AIA.

migration" of applications, i.e., the very activity VirtaMove alleges to be infringing here.  (Ex. 11 at 1.)  Osman's testimony will show that VirtaMove did not invent what they now claim to own.  (*See* Dkt. No. 23 at ¶ 12 (VirtaMove claiming to own patented "migration" technology).)

Fourth, a significant body of relevant prior art was developed at Stanford University.  That institution was at the forefront of computer science research, and academics from Stanford published prior-art papers that disclose key features of the asserted patent claims.  For example, the asserted '058 patent describes, as one of its preferred embodiments, moving network-protocol software from the "kernel" in an operating system to "user mode" code that runs on top of the operating system.  (Dkt. 23-3 at 3:16-25, 6:11-13.)  A paper published in 1987 discloses precisely this idea and describes a prior-art system developed at Stanford—called "VMTP"—that implemented the idea.  (Ex. 50 at 46.)  VMTP was developed by David R. Cheriton.  (Ex. 51.)  He is in NDCA.  (Ex. 53.)  His testimony will be relevant to at least invalidity under 35 U.S.C. § 103 because it will explain how Stanford University put the prior-art invention into public use.

Fifth, researchers at the University of California, Los Angeles ("UCLA") developed prior art that invalidates claims of the '058 patent in a manner similar to the Stanford prior art described above, but in the context of a file system instead of a network protocol.  Specifically, UCLA professor Paul R. Eggert authored a paper in 1993 about moving computer file systems from an operating system's "kernel" to the operating system's "user space."  (Ex. 57.)  Eggert's paper is particularly relevant and material because it mirrors an example embodiment in the '058 patent.  (*See* Dkt. 23-3 at 6:6-15 ("File System services" as example of "Critical System Element" moved to user space).)  Moreover, Eggert's paper states that his file system was implemented on "Sun OS 4.1.x"—a Sun Microsystems product that had the "shared library" functionality also required by the '058 patent claims.  (Ex. 57; *supra*, footnote 2.)  Eggert is subject to subpoena in NDCA because he works in California.  (Ex. 58.)

Sixth, the testimony of VirtaMove's former CEO, Greg O'Connor, will be relevant and material to VirtaMove's allegations that AWS knew of the asserted patents before this lawsuit. (Dkt. 23 ¶ 12.)  O'Connor works in NDCA.  (Ex. 41.)

Because Amazon has identified ten third-party witnesses in NDCA who are highly relevant, and VirtaMove has identified none in Texas, this factor weighs heavily in favor of transfer. *In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *4 (Fed. Cir. Jan. 19, 2022) (factor "tilt[s] strongly toward transfer because Netflix identified far more third-party witnesses in the [transferee] forum"); *In re Jupiter*, 14 F.4th 1313, 1319 (Fed. Cir. 2021) (requiring consideration of prior-art witnesses in the transfer analysis); *In re Apple*, 581 F. App'x at 889; *Samsung*, 2 F.4th at 1379 (factor "strongly favors transfer"); *see also In re Pandora Media, LLC*, No. 2021-172, 2021 WL 4772805, at *3 (Fed. Cir. Oct. 13, 2021) (non-party witnesses may be presumed unwilling).

### 3.     Access to Sources of Proof Favors Transfer.

For this factor, courts "look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017) (citing *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).  Courts must also consider the location of document custodians and location where documents are created and maintained.  *LoganTree, LP v. Apple, Inc.,* No. 6:21-CV-00397-ADA, 2022 WL 1491097, at *2 (W.D. Tex. May 11, 2022) (citing *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *3 (Fed. Cir. Nov. 15, 2021)).

Here, the accused ECS functionality is provided by Docker and *containerd* software that was researched, designed, and developed in NDCA.  (*Supra*, p. 3; Ex. 24, Ex. 26, Ex. 27.)  Moreover, the source code and documentation for both Docker and *containerd* are hosted by a company called GitHub that is based in San Francisco.  (Ex. 59 at 4, Ex. 60, Ex. 61 at 2.)  The presence of

these third-party companies in NDCA weighs in favor of transfer. *MemoryWeb, LLC v. Samsung Elecs. Co.*, No. W-21-CV-00411-ADA, 2022 WL 2195025, at *2-*3 (W.D. Tex. June 17, 2022).

Amazon's internal documents concerning both ECS and EMP—including source code, technical documents, financial documents, and marketing documents—are concentrated on the West Coast in Northern California, Oregon, and Seattle. (Lannér Decl. ¶¶ 9-10; Panayappan Decl. ¶¶ 8-9.)  Some document storage is also hosted in Virginia. (*Id.*)

VirtaMove identifies one Amazon office in Austin—over 300 miles from Midland—as the sole basis for venue here. (Dkt. 23 ¶ 11.)  However, "the mere fact that [defendants] have a general presence in the Western District of Texas" is immaterial. *TikTok*, 85 F.4th at 359-60.  The few engineers in Austin do not work on the technology at issue here, and were planning to leave Austin even before this case was filed. (Lannér Decl. ¶¶ 7-8.)

VirtaMove fails to identify any relevant evidence in or near Midland.  The asserted patents originated in Canada and the named inventors are over 1000 miles away. (*Supra*, p. 3.)

Given the wealth of evidence in NDCA and absence of evidence here, this factor strongly favors transfer. *TikTok*, 85 F.4th at 358 (transferee district lacked "any evidence relating to the case"); *In re Google LLC*, No. 2022-140, 2022 WL 1613192, at *3 (Fed. Cir. May 23, 2022) ("technical documents and source code relating to the accused functionality 'are physically present and/or electronically accessible' in the [transferee district]"); *Mobile Data Techs. LLC v. Meta Platforms, Inc.*, No. 7:22-cv-00244-ADA-DTG, 2023 WL 9051280, at *2 (W.D. Tex. Dec. 18, 2023) (transferee district was "where documents are created and maintained").

### 4.      No Practical Problems Would Arise In NDCA.

The fourth private factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.  Judicial economy falls under this factor. *In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *2-3 (Fed. Cir. Jan. 26,

2024); *In re: NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *4 (Fed. Cir. Oct. 13, 2021).

This factor is neutral because keeping this case in Midland would not advance judicial economy.  The asserted patents have not previously been litigated here (or anywhere else) and this case is in its early stages.  Amazon has not yet answered the complaint and the Court has not set a case schedule.  The Court has no substantive experience with the asserted patents.

Although VirtaMove has a co-pending case against Google in WDTX (No. 7:24-cv-33), VirtaMove filed that case only after suing Amazon.  The Federal Circuit has "rejected a district court's reliance on considerations of judicial economy arising after the filing of the lawsuit." *NetScout*, 2021 WL 4771756, at *4.  Thus, the Google case is immaterial.

If the Court were to consider the Google case in the transfer analysis, it would weigh in favor of transfer.  Google routinely seeks transfer from WDTX to NDCA, and has every reason to do so here in keeping with its usual practice.  NDCA is the most convenient forum for this case *and* Google's case.[4]  Consolidating these cases in the forum that is most convenient for both of them—NDCA—would maximize judicial economy.

### B.    The Public Interest Favors Transfer.

#### 1.    NDCA's Record of Trying Patent Cases Favors Transfer.

The first public factor considers "whether there is an appreciable difference in docket congestion between the two forums."  *Smart Mobile Techs. LLC v. Apple Inc.*, No. W-21-CV-00603-ADA, 2023 WL 5540152, at *9 (W.D. Tex. Aug. 28, 2023) (quoting *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020)).  Courts analyzing this factor consider the speed with which a case can be tried and resolved.  *Genentech*, 566 F.3d at 1347; *Adobe*, 823 F. App'x. at 932.

For patent cases in NDCA last year, the median time to trial was 30 months.  (Ex. 63.)  And

---

[4] VirtaMove's infringement allegations in both this case and Google's case rely on Docker. (*Supra*, p. 3.)  Both cases involve the same asserted patents, so they will implicate the same prior art from Sun Microsystems and many NDCA-based witnesses.  (*Supra*, p. 2.)  And Google is headquartered in NDCA.  (Ex. 62.)  Thus, NDCA is the most convenient forum for both cases.

over the last five years, the median was the same—30 months.  (Ex. 64.)  Over both periods, NDCA was faster than the national average.  (*Id.*; Ex. 63.)  In contrast, Midland has not yet established a track record of trying patent cases.  Although more than eighty patent cases have been filed or assigned here in the last five years, no trials have occurred so far.  (Ex. 65.)

The Court has not set any case schedule or trial date in this case.  But even if the Court were to set a trial date, it would carry little weight in the transfer analysis because "scheduled trial dates are often subject to change."  *In re Apple Inc.*, 979 F.3d 1332, 1344 n.5 (Fed. Cir. 2020).

Because NDCA has a track record of timely trying patent cases, this factor favors transfer.

### 2.      NDCA Has a Strong Local Interest in this Case.

The second public interest factor is "the local interest in having localized interests decided at home" and it "weighs heavily in favor of transfer when there is no relevant factual connection to the transferor district."  *TikTok*, 85 F.4th at 364 (quoting *Volkswagen II*, 545 F.3d at 317-18).

Here, VirtaMove has identified no factual connections between this case and WDTX.  VirtaMove is a Canadian company and the asserted patents originated in Canada.  (*Supra*, p. 3.)  But Amazon has identified extensive connections to NDCA—including third-party witnesses responsible for the accused Docker functionality, which is used not only by Amazon and Google but by countless other companies in Silicon Valley and elsewhere in NDCA.  (*Supra*, p. 3.)  The Federal Circuit has held that this type of nexus to NDCA weighs in favor of transfer.  *In re Samsung,* 2 F.4th at 1380 ("third parties researched, designed, and developed most of [the accused] applications in Northern California"); *see also Safecast Ltd. v. Microsoft Corp.*, No. 6:22-cv-00983-ADA, 2023 WL 4356073, at *2-8 (W.D. Tex. July 5, 2023) (finding no "relevant factual connection between the events that gave rise to this suit and this District" and granting transfer); *HD Silicon Sols. LLC v. Microchip Tech. Inc.*, No. W-20-CV-01092-ADA, 2021 WL 4953884, at *6 (W.D. Tex. Oct. 25, 2021) (development of accused technology in NDCA favored transfer).

Although VirtaMove has identified Amazon offices in Austin, those offices are over 300 miles from Midland and have no connection to the issues in this case.  (*Supra*, p. 4 (n.1).)  Amazon's general presence there does not tip the balance.  *In re Apple Inc.*, 979 F.3d at 1345 ("general contacts with the forum" should not be weighed heavily); *Juniper Networks*, 14 F.4th at 1320 ("general presence in the Western District of Texas is not enough"); *Smart Mobile Techs. LLC v. Apple Inc.*, No. W-21-CV-00603-ADA, 2023 WL 5540152, at *9 (W.D. Tex. Aug. 28, 2023).

### 3.     The Remaining Public Factors Are Neutral.

The remaining public factors include familiarity with the governing law and the avoidance of unnecessary problems with conflict of laws.  *Volkswagen I*, 371 F.3d at 203.  Both WDTX and NDCA are familiar with patent law, and no concerns regarding conflict of laws are present here.  Accordingly, those factors are neutral.  *Smart Mobile Techs.*, 2023 WL 5540152 at *9.

Balancing all of the § 1404 factors, NDCA is clearly more convenient than Midland.

### III.    VIRTAMOVE'S CLAIMS FOR WILLFUL INFRINGEMENT AND INDIRECT INFRINGEMENT SHOULD BE DISMISSED.

A plaintiff alleging willful patent infringement must "allege facts plausibly showing that the accused infringer: '(1) knew of the patent-in-suit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent.'"  *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 774 (W.D. Tex. 2022) (internal quotations omitted).  Importantly, "[m]ere knowledge of the Asserted Patents is not enough" to establish knowledge of infringement.  *Id.* at 777; *CTD Networks, LLC v. Google, LLC*, No. WA-22-CV-01042-XR, 2023 WL 5417139, *9 (W.D. Tex. Aug. 22, 2023).

Like willful infringement, both forms of indirect infringement (induced and contributory) require knowledge of the patent *and* knowledge of infringement.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011); 35 U.S.C. § 271(c).  Here, VirtaMove's amended complaint alleges no facts plausibly satisfying either of these two requirements.

### A.   VirtaMove Fails to Plausibly Allege Knowledge of the Asserted Patents.

VirtaMove's allegations of knowledge are set forth in two paragraphs.  The first paragraph alleges that an unspecified number of meetings occurred—over a 12-year period—between VirtaMove and unspecified people at AWS.  (Dkt. 23 ¶ 12.)  VirtaMove speculates that someone at AWS "would have learned" of the asserted patents at some point during this 12-year period, but pleads no facts that would make this speculation plausible.  (*Id.*)  For example, VirtaMove never alleges that it *told* anybody at AWS about any patents—much less the '814 and '058 patents.  (*Id.*)

The other paragraph alleges that AWS knew of the '814 patent because it was cited by patent examiners in connection with two "Amazon" patent applications.  (*Id.* at ¶ 17.)  But the allegation relies on patents that identify their assignee as "Amazon Technologies, Inc." ("ATI"). (Dkt. 16, Exs. 1-2.)[5]  ATI is not a defendant in this case, and VirtaMove alleges no facts that would allow the Court to impute any alleged knowledge from ATI to AWS or the other defendants.[6]

Because VirtaMove fails to plausibly allege that any defendant knew of any asserted patent, it fails to state a claim for willful infringement or pre-suit indirect infringement.

---

[5] The ATI patents are properly considered on this motion because they are subject to judicial notice and because they are referred to in the complaint and central to plaintiff's claim.

[6] *See, e.g.*, *Xiros, Ltd. v. Depuy Synthes Sales, Inc.*, No. W-21-CV-00681-ADA, 2022 WL 3592449, at *3 (W.D. Tex. Aug. 22, 2022) (granting motion to dismiss willful infringement claim because knowledge could not be imputed from an affiliated company to the defendant); *Flypsi, Inc. v. Google LLC*, No. 6:22-CV-0031-ADA, 2022 WL 3593053, at *5 (W.D. Tex. Aug. 22, 2022) ("the Court will not entertain inferential connections between two companies without proper allegations of how the knowledge would flow from one to another"); *Core Optical Techs., LLC v. Nokia Corp.*, No. SACV1902190JAKRAOX, 2020 WL 6126285, at *7 (C.D. Cal. Oct. 8, 2020); *Dynamic Data Techs. LLC v. Google LLC*, No. 19-1529, 2020 WL 1285852, *3 (D. Del. March 18, 2020), report and recommendation adopted, 2020 WL 3103786 (D. Del. June 11, 2020); *ZitoVault, LLC v. Int'l Bus. Machines Corp.*, No. 3:16-CV-0962-M, 2018 WL 2971131, at *3 (N.D. Tex. Mar. 29, 2018); *Varian Med. Sys., Inc. v. Elekta AB*, No. 15-871-LPS, 2016 WL 3748772, at *5 (D. Del. July 12, 2016), report and recommendation adopted, 2016 WL 9307500 (D. Del. Dec. 22, 2016); *Chalumeau Power Sys. LLC v. Alcatel-Lucent*, No. CIV.A. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012).

### B.   VirtaMove Fails to Plausibly Allege Knowledge of Infringement.

VirtaMove asserts that "Defendant knew, or should have known, that its conduct amounted to infringement," but fails to support this conclusory allegation with any facts.  (Dkt. 23 ¶ 17.) Specifically, VirtaMove pleads no facts suggesting that anyone with knowledge of the asserted patents—whether at ATI or at one of the Defendants—also knew how the allegedly infringing AWS services work, let alone understood that those services were infringing the patents.  Thus, VirtaMove's allegations are not plausible.  *CTD Networks, LLC v. Amazon.com, Inc.*, No. W-22-cv-01034-XR, 2023 WL 5281943, *7 (W.D. Tex. Aug. 16, 2023); *Monolithic Power Sys., Inc. v. Meraki Integrated Circuit (Shenzhen) Tech., Ltd.*, No. 6:20-cv-008876-ADA, 2021 WL 3931910, *5 (W.D. Tex. Sept. 1, 2021); *Dali Wireless Inc. v Corning Optical Commc'ns LLC*, 638 F. Supp. 3d 1088,  1098-1100 (N.D. Cal. 2022); *See Hills Point Indus. LLC v. Just Fur Love LLC*, No. CV 22-1256, 2023 WL 8804046, *3-4 (D. Del. Dec. 20, 2023) (citing *Callwave Commc'ns LLC v. AT & T Mobility LLC,* C.A. No. CV 12-1701-RGA, 2014 WL 5363741 at *2 (D. Del. Jan. 28, 2014)).

### CONCLUSION

WDTX is not a proper venue for VirtaMove's claims against Amazon.com, Inc. and Amazon.com Services LLC.  Thus, the Court should dismiss those claims or transfer this case to NDCA under 28 U.S.C. § 1406.  Alternatively, the Court should transfer this case to NDCA for convenience under § 1404 because five factors weigh in favor of transfer and none weigh against.

Independent of the venue analysis, the Court should dismiss all of VirtaMove's claims for willful infringement and pre-suit indirect infringement.

June 7, 2024

*Of Counsel:*

Harper Estes
Texas Bar No.  00000083
hestes@lcalawfirm.com
LYNCH, CHAPPELL & ALSUP
A Professional Corporation
Suite 700
300 N. Marienfeld,
Midland, Texas 79701
Telephone: 432-683-3351
Telecopier: 432-683-2587

Respectfully submitted,

By: */s/ Jeremy A. Anapol*

Joseph R. Re *(Pro Hac Vice)*
Jeremy A. Anapol *(Pro Hac Vice)*
KNOBBE MARTENS OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile:  949-760-9502
joe.re@knobbe.com
jeremy.anapol@knobbe.com

Colin B. Heidman *(Pro Hac Vice)*
Christie R.W. Matthaei *(Pro Hac Vice)*
Logan P. Young *(Pro Hac Vice)*
KNOBBE MARTENS OLSON & BEAR LLP
925 4th Ave, Ste 2500
Seattle, WA 98104
Telephone: 206-405-2000
Facsimile:  206-405-2001
colin.heideman@knobbe.com
christie.matthaei@knobbe.com
logan.young@knobbe.com

*Counsel for Defendants*
*Amazon.com, Inc.,*
*Amazon.com Services, LLC*
*and Amazon Web Services, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 7, 2024, all counsel of record who are deemed to have consented to electronic service were served with a copy of the foregoing via the Court's CM/ECF System.

*/s/ Jeremy A. Anapol*
Jeremy A. Anapol
