**PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| VIRTAMOVE, CORP., | |
| Plaintiff, | Case No.  7:24-cv-00030-ADA-DTG |
| v. | **JURY TRIAL DEMANDED** |
| AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; AND AMAZON WEB SERVICES, INC., | ███████████ |
| Defendants. | |

**PLAINTIFF VIRTAMOVE, CORP.'S OPPOSITION TO
AMAZON'S MOTION TO DISMISS OR TRANSFER (DKT. 31)**

**PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

I.     Introduction: Amazon's Motion Omits East Coast Witnesses and Evidence and Cannot Meet the Updated Burden of Proof ...............................................................................1

II.    Recent Fifth Circuit Changes to Transfer Law ...................................................................2

    A.     Fifth Circuit Law Controls On Procedural Transfer, Not Federal Circuit Law ...... 2

    B.     The 2024 Updated Burden of Proof Articulated by *In re Clarke* .......................... 2

    C.     *TikTok* Restores the "Rigid" 100-Mile Rule ....................................................... 4

    D.     Local Interest looks to *Events* that *Give Rise to the Suit* ...................................... 5

III.   Argument: The Private Interest Factors Weigh Against Transfer .......................................5

    A.     Many Willing Witnesses Weigh Against Transfer, and Amazon Has No Evidence That Third-Party West Coast Witnesses Are Willing ............................................... 5

    B.     The Compulsory Process Factor Weighs Against Transfer .................................... 9

    C.     Ease of Access to Evidence Weighs Against Transfer ......................................... 12

    D.     Other Practical Problems Weigh Against Transfer ............................................... 14

IV.   Argument: The Public Interest Factors Weigh Against Transfer .....................................14

    A.     The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant ............................... 14

    B.     A 16.2 Month Faster Time to Trial Greatly Weighs Against Transfer ................. 15

    C.     Conflict of Laws and Familiarity With Governing Law Are Neutral ................... 15

V.    Argument: No Reason for Transfer Under § 1406 ...........................................................16

VI.   Argument: The Willfull Infringement and Indirect Infringement Arguments Are Moot ..................................................................................................................................17

VII.  CONCLUSION ................................................................................................................17

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*BillJCo, LLC v. Apple Inc.*,
 583 F. Supp. 3d 769 (W.D. Tex. 2022) ...................................................................... 16

*Def. Distributed v. Bruck*,
 30 F.4th 414 (5th Cir. 2022) ......................................................................... 3, 5, 15

*In re Apple Inc.*,
 52 F.4th 1360 (Fed. Cir. 2022) ........................................................................ 4

*In re Apple Inc.*,
 979 F.3d 1332 (Fed. Cir. 2020) ........................................................................ 4

*In re Clarke*,
 94 F.4th 502 (5th Cir. 2024) ..................................................................... passim

*In re EMC Corp.*,
 677 F.3d 1351 (Fed. Cir. 2012) ........................................................................ 2

*In re Google LLC*,
 No. 2021-170, 2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ................................. 4

*In re Hoffmann-La Roche Inc.*,
 587 F.3d 1333 (Fed. Cir. 2009) ................................................................... 5, 15

*In re Planned Parenthood Fed'n of Am., Inc.*,
 52 F.4th 625 (5th Cir. 2022) .......................................................................... 13

*In re TikTok, Inc.*,
 85 F.4th 352 (5th Cir. 2023) .................................................................. 4, 5, 15

*In re Volkswagen of Am., Inc.*,
 545 F.3d 304 (5th Cir. 2008) ............................................................. 2, 3, 4, 15

*In re: NetScout Sys., Inc.*,
 No. 2021-173, 2021 WL 4771756 (Fed. Cir. Oct. 13, 2021) ................................. 14

*Microchip Tech. Inc. v. U.S. Philips Corp.*,
 367 F.3d 1350 (Fed. Cir. 2004) ........................................................................ 2

*Panduit Corp. v. All States Plastic Mfg. Co.*,
 744 F.2d 1564 (Fed. Cir. 1984) ........................................................................ 2

*Scramoge Tech. Ltd. v. Apple Inc.*,
 No. 6:21-CV-00620-ADA, 2022 WL 4595069 (W.D. Tex. Sept. 30, 2022) ............... 4

*Stewart Org., Inc. v. Ricoh Corp.*,
 487 U.S. 22 (1988) ......................................................................................... 2

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
 546 U.S. 394 (2006) ......................................................................................... 2

*Winner Int'l Royalty Corp v. Wang*,
 202 F.3d 1340 (Fed. Cir. 2000) ........................................................................ 2

**PUBLIC VERSION**

**Statutes**

28 U.S.C. § 1406(a) ................................................................................................ 16

35 U.S.C. § 271 ....................................................................................................... 5

**Rules**

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 16

**PUBLIC VERSION**

## I.   Introduction: Amazon's Motion Omits East Coast Witnesses and Evidence and Cannot Meet the Updated Burden of Proof

Amazon's Motion (Dkt. 31) relies on speculating about west coast witnesses while ignoring relevant witnesses and evidence that will come from the east coast. VirtaMove's employees and evidence are in eastern Canada. Transferring the case will increase the inconvenience to VirtaMove, counterbalancing any convenience gained by Amazon.

The latest Fifth Circuit law requires Amazon "clearly to demonstrate" that the NDCA is "clearly more convenient" by showing (1) "that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e. clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue."  *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphasis original). Amazon's discovery responses prove that Amazon does not know who or what evidence will materialize at trial. Amazon explicitly wrote that its witness and evidence lists will "depend on discovery that Amazon has not yet obtained." Ex. 02 at 11, 26.[1] Amazon has, at best, presented a speculative, cherry-picked list of witnesses/evidence for transfer-related purposes. Amazon has not clearly demonstrated that a *significant* gain in convenience will result from transferring the case because Amazon does not know who or what will be *actually* presented at trial. Under the latest law from 2024, the Court may deny Amazon's motion for a *per se* failure to meet its burden of clearly demonstrating that the identified witnesses and evidence will *actually* materialize at trial. Tellingly, Amazon's motion fails to even mention *In re Clarke* at all. Dkt. 31 at v.

Additionally, while new evidence reveals that the Fargate servers are elsewhere, this is insufficient to warrant transfer under Section 1406.  Even if the Court found venue to be improper

---

[1] All ## exhibits filed herewith. *See* Decl. of Peter Tong, filed herewith.  Amazon's exhibits are referred to by docket number.

for the Amazon.com Inc. and Amazon.com Services LLC defendants under the pending theory, the proper remedy is to dismiss Amazon.com Inc. and Amazon.com Services LLC with leave to amend.

## II.     Recent Fifth Circuit Changes to Transfer Law

### A.  Fifth Circuit Law Controls On Procedural Transfer, Not Federal Circuit Law

In 2023–2024, the Fifth Circuit reigned in the Federal Circuit's misapplications of transfer law. Transfer law is a procedural matter, so Amazon's numerous Federal Circuit cases should be ignored when they conflict with controlling Fifth Circuit law. "[M]otions to transfer, as a procedural matter, [are] governed by the law of the regional circuit in which [the district court] sits." *Winner Int'l Royalty Corp v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988)); *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012) ("transfer motions are governed by regional circuit law"). "Where the regional circuit court has spoken on the subject, [the Federal Circuit] must apply the law as stated." *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir. 1984); *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1356 (Fed. Cir. 2004) ("We are obligated to follow regional circuit law. . . ."). Unless an issue "pertains uniquely to patent law," the Federal Circuit is "bound to apply the law of the [regional] Circuit." *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 398 (2006).

### B.  The 2024 Updated Burden of Proof Articulated by *In re Clarke*

"[T]he plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the [venue] should be changed." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 n.10 (5th Cir. 2008). This is "a burden of proof question," and "it places a significant burden on the movant to show good cause for the transfer." *Id.* "It is the movant's burden—and the

**PUBLIC VERSION**

movant's alone—to 'adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.'" *In re Clarke*, 94 F.4th at 508.

"[T]he fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party **must adduce evidence** and arguments **that clearly establish good cause** for transfer based on convenience and justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (emphasis added).

Accordingly, to establish "good cause," a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.

*In re Clarke*, 98 F.4th at 508 (internal citations omitted, emphasis original).

In summary, Amazon has the sole evidentiary burden of *clearly* proving that the NDCA will result in *significant* convenience gains that will *actually* materialize at trial. *Id.* Amazon cannot meet this burden by speculating about or cherry-picking witnesses and evidence, without clearly knowing who or what will be presented at trial by both parties. For example, in the *Volkswagen* auto accident case, the universe of witnesses was easy to identify as the parties to the accident, the witnesses to the accident, and any doctors, mechanics, and experts the parties retain. *In re Volkswagen*, 545 F.3d at 317 ("Volkswagen has submitted a list of potential witnesses."). This burden of proof does not change for patent cases.

Pre-*Clarke* transfer motions would routinely involve inaccurate speculation. For example, in another case, Sony filed a transfer motion speculating about many potential witnesses and prior art early in a case, but as the case developed, it was revealed that 90.9% of Sony's predictions were

PUBLIC VERSION

inaccurate. Ex. 25 at 4–7. This Court was correct to be concerned about such speculation. *See, e.g.,* *Scramoge Tech. Ltd. v. Apple Inc.*, No. 6:21-CV-00620-ADA, 2022 WL 4595069, at *1 (W.D. Tex. Sept. 30, 2022) ("Fact discovery will allow the parties to find the relevant evidence and witnesses that bear on the transfer factors rather than speculate about them.")  Although the Federal Circuit dismissed the lower court's concern about speculation (*In re Apple Inc.*, 52 F.4th 1360, 1362 (Fed. Cir. 2022)), the Sony case shows inaccurate speculation is an ongoing problem. In *Clarke*, the Fifth Circuit no longer permits speculation. It turns out that despite the Federal Circuit's disagreement, this Court was right all along to be concerned about speculation.

C.  *TikTok* **Restores the "Rigid" 100-Mile Rule**

The Federal Circuit erroneously rejected a "rigid" application of the Fifth Circuit's 100-mile rule. *E.g., In re Apple Inc.*, 979 F.3d 1332, 1341 (Fed. Cir. 2020) (finding that travel from NY to the WDTX or NDCA are about equally inconvenient because the witness is required "to travel a significant distance no matter where they testify"); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021) (rejecting "rigid" 100-mile rule to consider the lack of a major airport in Waco and to consider that "time is a more important metric than distance.") The Fifth Circuit opinion *In re TikTok, Inc.* ruled that such analysis "ignores our 100-mile test." *In re TikTok, Inc.*, 85 F.4th 352, 361 (5th Cir. 2023). The "rigid" *Volkswagen* 100-mile rule is now restored: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of Am., Inc.*, 545 F.3d at 317. Amazon's arguments about flight times and connecting airports are irrelevant under Fifth Circuit law.

### D. Local Interest looks to *Events* that *Give Rise to the Suit*

*In re Clarke* restored the proper analysis of this factor by looking to the *events that give rise to a suit* (i.e. infringement), doing away with the "design and development" analysis articulated by the Federal Circuit.

> To identify localized interests properly, "[w]e look not to 'the parties' significant connections to each forum . . . but rather the significant connections between a particular venue and the events that gave rise to a suit.'" *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435).

*In re Clarke*, 94 F.4th at 511. The only event giving rise to this suit is infringement, and when it occurs nationwide, it is a "completely diffuse interest." *Id.* at 510. The design, research, and development of accused products do not give rise to infringement under 35 U.S.C. § 271 and are merely experimental use. Thus, *In re Clarke* restored the rule that "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009).

## III. Argument: The Private Interest Factors Weigh Against Transfer

### A. Many Willing Witnesses Weigh Against Transfer, and Amazon Has No Evidence That Third-Party West Coast Witnesses Are Willing

Amazon's transfer motion fails to consider many willing witnesses who will find trial in the WDTX more convenient.

<u>5 VirtaMove Witnesses.</u> VirtaMove is a small company, so all five of its active employees (Nigel Stokes, Susan Cameron, Cedric Burgins, Steven Antoine, and Emanuel Sousa) likely have some relevant knowledge about VirtaMove's history, products, sales, software operation, and documents that are relevant to this case. Ex. 01 at 18–19. They all reside in Ontario, Canada in

**PUBLIC VERSION**

Ottawa, Toronto, or Arnprior, all of which are closer to Texas. *Id.* Thus, they will find the WDTX more convenient under the rigid 100-mile rule.

5 Closer Amazon Witnesses. Many of Amazon's witnesses are also likely to find travel to Texas more convenient. Phil Estes, Hani Suleiman, Arturo Molina, Beau Grosse, Haoqi Wang[2] are all relevant engineers with relevant knowledge. Ex. 02 at 10 (identifying technical or finance knowledge of ECS, EMP or Prime Video). All of them reside in locations closer to Texas (Virginia or Wisconsin), so they will find the WDTX more convenient under the rigid 100-mile rule.

3 Amazon Witnesses in Israel. The witnesses Adi Habusha, Yair Armoza, Udi Ashkenazi, and Yotam Admon are the most knowledgeable about the accused Graviton 2 processor. Ex. 2 at 21–22; Dkt. 1-4 at 2 (accusing Graviton 2 processor). They may have relevant testimony about how the processor interacts with the kernel of the operating system, which is relevant to both issues of infringement and technical benefits of the '814 patent. Ex. 01 at 22; Dkt. 1-4 at 2 ("running in kernel mode using said processor"). They all live in Israel, so they will find Texas more convenient under the rigid 100-mile rule. Ex. 03 (7,234 miles to Midland); Ex. 04 (7,443 miles to NDCA).

2 Amazon ECS Engineers in Austin: Amazon has two ECS engineers in Austin (Alekhya Kumbam and Amul Cherukuri) both of whom will find trial in Texas more convenient.  Ex. 5; Ex. 6; Ex. 2 at 25. Despite Amazon's arguments that they are not important to this case, Cherukuri █

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 5 at AMZ_VMC_00000236–37. Cherukuri

is likely to be called to trial because he is good at explaining things. *Id.* at 000237 (███████████

███████████████████████████████████████████████████████████████████ )

---

[2] They are addressed again in following paragraphs.

**PUBLIC VERSION**

Kumbam ████████████████████████████████████████████

████████████████████ *Id.* at 241. She may be called to testify about ███████████, which

may affect damages. Although they were instructed to relocate in December 2023, they are still

working in Austin nine months later. Ex. 7 at 31:25–33:10. It appears that ████████████████

████████████████████████████████████████████████████████

████████████████ They will likely remain in Austin.

████████ Amazon ECS Engineers on East Coast. Amazon also has an ECS team

members who reside in in New York/New Jersey.  Ex. 8 at  21:20–24. The count of ECS engineers

in New Jersey is in the ██████ Ex. 07 at 31:8–16. If any of them are called for trial to testify

about their specific part of ECS, they will find travel to Texas closer and more convenient under

the rigid 100-mile rule. Amazon has not clearly demonstrated (and does not know) whether the

ECS engineers who will materialize at trial will travel from Seattle or New Jersey. Ex. 7 at 52:15–

54:20; *see* Ex. 20 at 6 ("Amazon's decisions about which witnesses to call will be informed by

future developments").

Likely Amazon EMP Witnesses. Amazon's likely EMP technical witness will be Banerjee,

Srinivasa, or Pittle from Seattle or Molina or Grosse from Wisconsin because they are the

engineers with access to source code. Dkt. 40 ¶ 4. Among these five, there is least a 40% chance

that Molina or Grosse will be called to trial to testify about EMP, and because they would be

traveling from Wisconsin, they would find the WDTX more convenient under the rigid 100-mile

rule. Ex. 9 (1,081 miles from Wisconsin to Midland); Ex. 10 (1,758 miles from Wisconsin to San

Francisco). The EMP witness is actually likely to be a 50/50 toss-up between the two "Senior"

EMP software developers Grosse and Pittle due to their seniority. Dkt. 40 ¶ 4. Amazon has not

**PUBLIC VERSION**

clearly demonstrated (and arguably, not even proven by a preponderance) that a Seattle-based EMP witness will be called at trial.

Unlikely Amazon EMP Witnesses. Panayappan, Mummidi, Nayak, and Rajagopal are unlikely to materialize at trial. Panayappan ████████████████████████████████████████ ████████ will not be called at trial. Ex. 11 at 16:15–23, 23:5–12. Mummidi only worked "on and off" on EMP, so he only has limited EMP knowledgeable and is less likely to be called at trial. *Id.* at 83:20–84:2. He never even contributed to the EMP code. *Id.* at 24:6–8. Nayak and Rajagopal have knowledge of "EMP before launching," but this knowledge is outdated and irrelevant because *pre-launch* EMP is not something accused of infringement. Dkt. 40 ¶ 6. Moreover, Nayak and Rajagopal worked on other projects, so EMP was a fraction of their past work. Ex. 11 at 37:22–38:22, 43:18–46:11; *see* Ex. 20 at 9 ("Amazon's decisions about which witnesses to call will be informed by future developments"). One of the other witnesses who dedicated more time to EMP is likely to appear instead.

Amazon Finance Witnesses. The evidence does not support Amazon's attorney argument that "marketing and finance employees are overwhelmingly concentrated in California and Seattle (Lannér Decl. ¶ 11 (ECS); Exs. 69-72 (EMP))." Dkt. 31 at 10.  The Lannér Decl. (Dkt. 39) ¶ 11 merely explains that "all members of the finance team responsible for ECS work in Seattle, except for one person who works in Dallas, Texas." Amazon's exhibits 69-72 (Dkts. 37-69 to 37-72) identify Maged Bekhit in Seattle, Haoqi Wang in DC/Baltimore, and Tamara Dull in Los Angeles, and Frank Wang in California. Additionally, Hyun Hwang is in Dallas. Ex. 02 at 25. Both Wang and Hwang will find travel to the WDTX more convenient under the rigid 100-mile rule. There is a 50/50 chance that the finance witness will travel from a location closer to the NDCA. Amazon has failed to prove by even a preponderance (much less clearly demonstrate) that any convenience

PUBLIC VERSION

will materialize for a finance witness by transferring this case to the NDCA. *See* Ex. 20 at 6, 9 ("Amazon's decisions about which witnesses to call will be informed by future developments").

Prime Video Witnesses. Amazon identified three Prime Video Witnesses (Patel, Marieb, and Suleiman).  Dkt. 31 at 4. Of these, Suleiman is in New York and will find travel to Texas more convenient under the 100-mile rule. *Id.* If the Court dismisses Amazon.com, Inc. and Amazon.com Services LLC (*see* Section V below), then the Court should disregard all of these witnesses.

**B.  The Compulsory Process Factor Weighs Against Transfer**

Holding trial in Texas allows seven relevant third-party witnesses to attend trial.

5 Former[3] VirtaMove Witnesses With Declarations. Five relevant former VirtaMove employees will only attend trial in Texas. Paul O'Leary and Dean Huffman are named inventors of the VirtaMove patents, and both reside in Kanata, Ontario, Canada. Ex. 12 ¶¶ 3–4; Ex. 13 ¶¶ 3–4. Chuck Colford was a former CEO of VirtaMove, resides in Kanata, Canada. Ex. 14 ¶¶ 3–4. Mark Woodward is a former VirtaMove vice president of product engineering, and resides in Lyndhurst, Canada. Ex. 15 ¶¶ 2-3. Colford and Woodward may testify about the operation of VirtaMove's software and/or value of VirtaMove's software. Greg O'Connor is a former CEO of AppZero, and he lives in Massachusetts, not California. Ex. 16 ¶ 3. O'Connor's LinkedIn page is inaccurate. Dkt. 37-41. These five witnesses are only willing[4] to attend trial in Texas because it is closer and thus more convenient than the NDCA under the 100-mile rule. Exs. 9–13 ¶¶ 5–12.

2 Former VirtaMove Witnesses in Texas. Two former VirtaMove employees, David Roth and Ernesto Benedito reside near Dallas, Texas and can only be compelled to attend trial in the WDTX.  Exs. 17, 18. Roth was a former CEO, and Benedito was a former Software Development

---

[3] For simplicity, "former" individuals worked for VirtaMove Corp. or its predecessors AppZero and/or Trigence.

[4] They cannot be compelled in California but are willing to travel to Texas. If the Court does not count them under this factor, then the Court should count under the willing witness factor.

**PUBLIC VERSION**

Team Lead. *Id.* They may know about the value or operation of VirtaMove's technology and product.

When assessing this factor, the Court should discount Amazon's proposed third-party witnesses because Amazon has failed to clearly demonstrate that they will *actually* materialize at trial. Amazon attempts to inflate the third-party witness count with 1) prior art witnesses and 2) Docker witnesses. Dkt. 31 at 11–14.

The Docker Team. Amazon failed to prove that the Docker development team (Hykes, Tiigi, McGowan) has any relevant testimony at trial.  They may have independently developed Docker, but independent development of open-source technology is not a defense to infringement. They may know how the open-source version Docker operates, but Amazon has not designated any of them as 30(b)(6) corporate representatives on the topic of the operation of *Amazon's* implementation of specific versions of Docker in Amazon's own Linux operating system. Ex. 08 at 46:22–47:11; Ex. 07, 57:13–58:14. For testimony about how Amazon's specific software works, Amazon is likely to call one of its own engineers at trial, such as Estes from Virginia, because he has both present and historical knowledge of Docker and containers, as well as how Amazon does or does not further customize the open-source software. Dkt. 38 at 1 ¶¶ 1–4; Ex. 8 at 25:4–12, 53:5–54:17; Ex. 19. The evidence shows that witnesses like Tiigi are unlikely to appear. Amazon's Motion (Dkt. 31 at 4) relies on the declaration of Estes (Dkt. 38) for Tiigi, but when Estes was deposed, Estes had no clue why Tiigi would be relevant at trial. Ex. 8 at 59:1–63:16. At trial, experts will opine on whether Amazon's *specific* deployment of Docker infringes. Amazon's evidence does not carry the burden of clearly demonstrating that Tiigi, McGowan, or Hykes will materialize at trial.

PUBLIC VERSION

Prior Art Inventors. Amazon is also unlikely to call the prior art inventors (Tucker,[5] Beck, Price, Osman, Cheriton, Eggert) at trial. Given the typical time pressures of a 1-week trial, Amazon will likely, at most, assert only its best prior art at trial and call one prior art inventor. Amazon's refusal to commit to limiting its prior art list for trial and Amazon's explicit reservation of its right to assert other prior art, including other prior art with inventors closer to Texas, exacerbates Amazon's failure to clearly prove that any of these prior art witnesses will *actually* materialize at trial. Ex. 02 at 11 ("this interrogatory is premature. The deadline for Amazon to provide its trial witness list has not bet set . . . Amazon's witness list will depend on discovery that Amazon has not yet obtained."), 16 ("Amazon expects to identify additional prior art in its invalidity contentions"). Indeed, Amazon now asserts 7 patents/publications (3 naming Tucker), 3 nonpatent publications (1 naming Osman), and 12 different systems (2 involving Tucker or Cheriton) as prior art against the '814 Patent. Ex. 27 at 10–15.   Amazon also asserts 2 patents/publications, 7 nonpatent publications (1 involving Eggert), and the same 12 systems (2 involving Tucker or Cheriton) (21 total) as prior art against the '058 Patent. *Id.* The percentage of Tucker/Osman/Cheriton prior art against the '814 Patent is 6/22 or only 27%.  The percentage of Tucker/Cheriton/Eggert prior art against the '058 Patent is 3/21 or just 14%. This does not even rise to a preponderance that the relevant prior art will be elected for trial, much less rise to the level of clearly demonstrating that the related witness will further materialize at trial.

Prior art authors Beck and Price are unlikely to be call at all because they are redundant with Tucker on prior art Pat. 7,437,556. Amazon describes Tucker as the "lead inventor" on the same prior art, and given that Tucker will likely be instructed by Google to fully cooperate with Amazon, Beck and Price are unlikely to be called. Dkt. 31 at 12. Similarly, Subhravetti is on the

---

[5] Tucker should not be counted here at all. He is a Google employee. Ex. 7. Google is defending against the same patents and will likely send him anywhere to help invalidity arguments.

**PUBLIC VERSION**

same Zap prior art that Osman is named on, so Subhravetti is duplicative. Ex. 27 at 11. Unless Amazon's upcoming reply commits to limiting its prior art to those involving Tucker, Beck, Price, Osman, Cheriton, or Eggert, the Court should not credit any prior art witness given the high burden of proof imposed by *In re Clarke*.

In the event that the Court does find that Amazon has clearly proven that some of these people are going to materialize at trial, the Court should at most weigh them as 2 or 3 people who might need to be subpoenaed in the NDCA: one Docker 30(b)(6) witness (not 3 who might give inconsistent testimony) and one or two prior art witnesses. Even under this scenario, far greater inconvenience would be caused to O'Leary, Huffman, O'Connor, Colford, and Woodward. Furthermore, prior art author David Ely can only be compelled in Texas, further counterbalancing one of the California-based prior art authors. Ex. 02 at 10; Ex. 27 at 12–13 (naming Ely on 2 prior art). This factor should weigh against transfer to some degree.

### C. Ease of Access to Evidence Weighs Against Transfer

VirtaMove has evidence in eastern Canada that can be more easily transported to the WDTX than to the NDCA. Relevant evidence about the VirtaMove products will be at VirtaMove's office in Kanata, Ontario, which is in eastern Canada, and which is closer to Midland, Texas than to the NDCA. Ex. 21 at 1; Ex. 12 ¶ 10. This includes physical evidence relevant to this case at its Kanata, Ontario, Canada office. Some of VirtaMove's patent files are kept in paper form in two heavy boxes. Ex. 22. VirtaMove's source code is access controlled and limited to its employees and to Mark Woodward in Ontario, Canada, except that a copy of the source code was already made available for inspection at the offices of Russ, August & Kabat and Kirkland & Ellis in Dallas, Texas as ordered by Judge Gilstrap. Ex. 23; Ex. 24 at 6; Ex. 29 ¶ 10; Ex. 01 at 9.

**PUBLIC VERSION**

Amazon argues that Docker evidence weighs against transfer, but Amazon fails to identify any specific evidence that is harder to bring to the WDTX.  Even if Docker is somehow relevant, as a publicly available open-source project, Docker's history is documented in public repositories. Dkt 37-59; Dkt. 37-60; *see* https://github.com/orgs/docker/repositories (Docker repository); Ex. 08 at 25:4–12, 35:1–36:9; 60:8–19. In the unlikely event that open-source Docker code is needed at trial, an expert will be able to download the open-source code just as easily from either district. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630, 632 (5th Cir. 2022) (affirming district court that "found that the vast majority of the evidence was electronic, and therefore equally accessible in either forum."). Similarly, Amazon's own internal electronic documents can be accessed just as easily at its Austin office in the WDTX as in the NDCA, or anywhere else there is an internet connection.  Indeed, Amazon's employees regularly communicate with each other across the country using electronic sharing such as Chime, e-mail, Slack, Quip, WorkDocs, GitHub, and GitFarm. Ex. 7 at 16:1–20:12.

According to Amazon's 30(b)(6) witness, none of the EMP witnesses are known to personally have any relevant evidence. Ex. 11 at 45:13–50:23.

Amazon has the burden of proving that it has *clearly* demonstrated that it is *significantly* more convenient to hold trial in California based on the ease of access to evidence. *In re Clarke*, 94 F.4th 508. Amazon offers no information about the quantity of trial evidence Amazon has in the West Coast as compared to Virginia (Dkt. 39 ¶ 9), nor does Amazon allow the Court to meaningfully compare the difficulty of moving Amazon's evidence to the WDTX against the difficulty of moving VirtaMove's evidence across the country from Ontario to California. In fact, Amazon admits that "Amazon's exhibit list will depend on discovery that Amazon has not yet obtained." Ex. 02 at 26. Due to this uncertainty, the Court cannot reliably assess whether or not

trial in California will be *significantly* more convenient in terms of moving or accessing trial evidence, so this factor cannot weigh in favor of transfer.  If anything, the Court should weigh this factor against transfer due to VirtaMove's evidence in eastern Canada.

### D. Other Practical Problems Weigh Against Transfer

VirtaMove's case asserting the same patents against Google remains pending in this Court. Thus, transferring the Amazon case will burden another court in the NDCA with learning about the complex technology in VirtaMove's patents. Keeping the Amazon case allows this Court to conduct a joint *Markman* hearing for Amazon and Google, where the Court need only learn the patented technology once.  *Compare* Dkt. 59, *with* Ex. 26 (both setting January 9, 2025 *Markman* hearing).  Similar efficiency arises at the summary judgement stage, where this Court will be familiar with VirtaMove's patents if motions for summary judgment of invalidity or noninfringement are filed in both the Amazon and Google cases. Thus, this factor weighs against transfer.

The Amazon case and Google case were filed at nearly the same time (January 26, 2024 for Amazon and January 31, 2024 for Google). They are proceeding on nearly identical schedules. *Compare* Dkt. 59, *with* Ex. 26.  *NetScout* is directed to cases filed four months apart (between December 2020 and April 2021), and *NetScout* does not address co-pending case filed less than one week apart. *In re: NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *4 (Fed. Cir. Oct. 13, 2021).

## IV.  Argument: The Public Interest Factors Weigh Against Transfer

### A. The Local Interest Factor is Legally Neutral Because Infringement Occurs Nationwide, While Design and Development Are Irrelevant

The local interest factor is neutral because both Amazon's products and VirtaMove's products are sold nationwide, including in Texas. Ex. 02 at 14-15; Ex. 08 at 17:12–16; Ex. 07 at

**PUBLIC VERSION**

13:21–23; Dkt. 39 ¶ 4. "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *Hoffmann-La Roche*, 587 F.3d at 1338; *In re Clarke*, 94 F.4th at 510 (describing a "completely diffuse local interest"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (citizens of Texas "would be interested to know whether there are [at-issue] products offered for sale in close proximity to the Marshall Division.")

As explained in Section II(D) above, the Fifth Circuit did away with the analysis of the Federal Circuit's erroneous "design and development" analysis because neither "design" nor "development" are "events that gave rise to a suit" for patent infringement under 35 U.S.C. § 271. *Clarke*, 94 F.4th at 511 (citing *TikTok*, 85 F.4th at 364 (quoting *Def. Distributed*, 30 F.4th at 435))). Amazon does not cite any Fifth Circuit case with "design and development" analysis. Dkt. 78 at 17–18. Instead, Amazon relies on outdated, conflicting Federal Circuit cases, but Fifth Circuit cases control on the procedural issue of transfer. *Id.*; *see* Section II(A), above. Thus, none of the design, development, or testing of Docker are relevant to this factor unless Amazon can show that these acts give rise to infringement under Section 271.

## B. A 16.2 Month Faster Time to Trial Greatly Weighs Against Transfer

The Court set this case for trial on February 2, 2026—a date this district Court is better positioned to evaluate. Dkt. 59 at 5; *In re TikTok*, 85 F.4th at 363. The case is proceeding to trial ahead of historical statistics. *See* Ex. 28 at 6 (32.7 median months to civil trial). The NDCA has a 48.9 month median time to civil trial. *Id.* at 10. Although statistics are no longer "particularly relevant" (if relevant at all), this case appears to be proceeding so far ahead of the 48.9 month trials in the NDCA that this factor can only weigh greatly against transfer. *In re Clarke*, 94 F.4th at 510.

## C. Conflict of Laws and Familiarity With Governing Law Are Neutral

VirtaMove agrees with Amazon that these factors are neutral.

## V.   ARGUMENT: NO REASON FOR TRANSFER UNDER § 1406

The Court should not transfer this case under § 1406.  Venue is proper for all defendants. Even if venue were improper, the remedy should be to dismiss with leave to amend under 28 U.S.C. § 1406(a) ("shall dismiss"), Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires"), and the Court's Scheduling Order. Dkt. 59 at 2–3 ("Deadline to amend pleadings").

The propriety of venue for Amazon Web Services, Inc. is not challenged. Dkt. 31 at 7–8. Amazon challenges the propriety of venue only for the Amazon.com, Inc. and Amazon.com Services LLC defendants because their allegedly infringing use of "Fargate" occurs only outside of the WDTX. *Id*. at 5, 7–8 ("ECS on Fargate . . . is not, and has not been, hosted in Texas"). However, the problem with this argument is that the infringement allegations are more broadly directed to ECS, not the Fargate-specific component.  It is alleged that "The Fire TV Team at Prime Video implemented Amazon Elastic Container Service (Amazon ECS) to run secure, reliable scalable and highly fault-tolerant containers . . ." Dkt. 23 ¶ 26. The rest of this sentence happens to then mention "Fargate," but the allegation is against the use of ECS generally, not just the Fargate part. Evidence that "Fargate" is not in Texas is insufficient to establish that broader ECS-based infringement does not occur in Texas. *See also* Dkt. 39 ¶ 4 ("AWS offers ECS and Fargate to customers throughout the United States").

If the Court decides that venue appears improper for only two of the three defendants, then the Court should not transfer all three defendants to the NDCA. Instead, the Court should dismiss the Amazon.com, Inc. and Amazon.com Services LLC defendants with leave to take 3 months of fact discovery, as is the Court's routine practice for dismissing indirect infringement.  *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 782 (W.D. Tex. 2022) ("in accordance with the Court's

PUBLIC VERSION

usual practice, the Court permits BillJCo to amend its Complaint after the start of fact discovery and before June 2, 2022, to re-plead . . ."). Indeed the Federal Rules of Civil Procedure instructs that the "Court should freely give leave when justice so requires." As filed, the amended complaint provides one example of infringement by the Amazon.com Inc. and Amazon.com Services LLC defendants; other examples may be discovered and pleaded. If fact discovery reveals that all ECS-related use by Amazon.com Inc. and Amazon.com Services LLC is indeed exclusively through the use of Fargate, then VirtaMove has no plans to re-file the case in California, and no piecemeal litigation is expected. It would be most efficient to resolve the issue in this Court. This would be the most efficient use of all parties' resources. So, regardless of how the Court decides this issue, transfer is not warranted under § 1406.

## VI.   ARGUMENT: THE WILLFULL INFRINGEMENT AND INDIRECT INFRINGEMENT ARGUMENTS ARE MOOT

Amazon's motion to dismiss claims of willful and indirect infringement is moot in view of the parties stipulation.  Dkt. 42.

## VII.   CONCLUSION

In conclusion, both the private and public factors weigh against transfer, and Amazon has failed to carry the burden of clearly proving under *In re Clarke* that the marginal gain in convenience will be *significant* and *actually* materialize.  Amazon's transfer motion should be denied.

The Court should not transfer this case under § 1406 because Amazon has failed to present a meaningful challenge to venue of Amazon.com Inc. and Amazon.com Services LLC. Even if venue were improper, the Court should dismiss just these two defendants without prejudice, not transfer the case.

Finally, Amazon's argument about indirect and willful infringement is moot.

**PUBLIC VERSION**

Dated: September 27, 2024       Respectfully submitted,


By: *_/s/ Qi (Peter) Tong_____*

Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
James A. Milkey (CA SBN 281283)
jmilkey@raklaw.com
Amy E. Hayden (CA SBN 287026)
ahayden@raklaw.com
Jacob Buczko (CA SBN 269408)
jbuczko@raklaw.com
James Tsuei (CA SBN 285530)
jtsuei@raklaw.com
Christian W. Conkle (CA SBN 306374)
cconkle@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
Daniel B. Kolko (CA SBN 341680)
dkolko@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Qi (Peter) Tong (TX SBN 24119042)
ptong@raklaw.com
**RUSS AUGUST & KABAT**
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (310) 826-7474

*Attorneys for Plaintiff VirtaMove, Corp.*

**PUBLIC VERSION**

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Local Rule CV-5, I hereby certify that, on September 27, 2024 counsel of record who have appeared in this case are being served with a copy of the foregoing via email.

<u>*/s/ Qi (Peter) Tong*</u>
Qi Tong