**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| VIRTAMOVE, CORP., <br><br> Plaintiff, <br> v. <br><br> AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; AND AMAZON WEB SERVICES, INC., <br><br> Defendant. | Case No. 7:24-CV-00030-DC-DTG <br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF VIRTAMOVE, CORP.'S PARTIAL MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................................ 1
II. FACTUAL BACKGROUND ............................................................................................. 2
III. LEGAL STANDARD ......................................................................................................... 2
IV. ARGUMENT ...................................................................................................................... 4
   A. The AWS Customer Agreement does not apply to VirtaMove's infringement allegations. 4
   B. The alleged waiver of Seventh Amendment rights is unenforceable because it was not made knowingly or voluntarily. ................................................................................... 6
      1. The inconspicuous nature of the waiver weighs heavily against a finding that the alleged waiver was "knowing" and "voluntary." ................................................... 7
      2. The non-negotiability of the Agreement also weighs against waiver. ............................ 9
      3. Neither of the last two factors (relative bargaining power and business acumen / professional experience) render the alleged waiver enforceable. ......................................... 11
V. CONCLUSION ................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Cases**

*Abad v. Maxum Petroleum Operating Co.*,
  Case No. MO:16-CV-00001-RAJ, 2016 WL 11261305 (W.D. Tex. Oct. 14, 2016) .......... 7, 8, 9
*Ashcroft v. Iqbal*,
  556 U.S.662 (2009) ................................................................................................................ 3
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 3
*BMC Software, Inc. v. Int'l Bus. Machines Corp.*,
  No. CV H-17-2254, 2018 WL 7291425 (S.D. Tex. Aug. 30, 2018) ......................................... 5
*Brookhart v. Janis*,
  384 U.S. 1 (1966) .................................................................................................................... 6
*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ................................................................................................... 3
Cuvillier v. Taylor,
  503 F.3d 397 (5th Cir. 2007) ................................................................................................... 3
*Dickson v. Dexcom Inc.*,
  No. 2:24-CV-00121, 2024 WL 3417392 (W.D. La. July 15, 2024) ....................................... 10
*Dimick v. Schiedt*,
  293 U.S. 474 (1935) ................................................................................................................ 7
*Hearst Commc'n, Inc. v. Seattle Time Co.*,
  154 Wn.2d 493 (2005) ............................................................................................................. 5
*Herzog v. Superior Court of San Diego County*,
  101 Cal. App. 5th 1280 (4th Dist. 2024) ............................................................................... 10
*Jennings v. McCormick*,
  154 F.3d 542 (5th Cir. 1998) ................................................................................................... 3
*Jones v. Tubal-Cain Hydraulic Sols., Inc.*,
  No. 4:16-CV-01282, 2017 WL 3887235 (S.D. Tex. Sept. 5, 2017) ...................................... 7, 9
*Martelack v. Toys R US*,
  No. CV 13-7098, 2016 WL 762656 (D.N.J. Feb. 25, 2016) .................................................... 8
*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................................................... 11
*Pizza Hut L.L.C. v. Pandya*,
  79 F.4th 535 (5th Cir. 2023) ........................................................................................... passim
*Saluteen-Maschersky v. Countrywide Funding Corp.*,
  105 Wn. App. 846 (2001) ........................................................................................................ 5
*Seaboard Lumber Co. v. United States*,
  903 F.2d 1560 (Fed. Cir. 1990) ............................................................................................... 7
*Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*,
  328 F. Supp. 3d 598 (N.D. Tex. Aug. 30, 2018) ............................................................ 8, 9, 10
*Solis v. County of Los Angeles*,
  514 F.3d 946 (9th Cir. 2008) ................................................................................................... 3
*Topstone Commc'ns, Inc. v. Xu*,
  No. 4:22-CV-00048, 2024 WL 1517637 (S.D. Tex. Apr. 8, 2024) ......................................... 3
*Transportation Mgmt. Servs., Inc. v. Hiscox Ins. Co., Inc.*,
  No. 1:23-CV-00740-ADA, 2024 WL 1125097 (W.D. Tex. Feb. 12, 2024) ............................ 3

*Zavala v. Aaron's, Inc.*,
   No. 4:15-CV-0123, 2015 WL 5604766 (E.D. Tex. Sept. 23, 2015) ..................................... 7, 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 2

**I.      INTRODUCTION**

In its second counterclaim, Amazon asks the Court to declare that VirtaMove is contractually bound by the "AWS Customer Agreement" and has therefore waived its right to a jury trial in this case. Dkt. 61 at 10-13. Amazon's third counterclaim further alleges that VirtaMove breached the agreement by seeking a jury trial. Dkt. 61 at 13-14. VirtaMove respectfully requests that these counterclaims be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for two distinct reasons.

First, to the extent the AWS Customer Agreement is enforceable at all, by its own terms it governs VirtaMove's "access to and use of [Amazon's] Services." Dkt. 61-1 at 2. The Agreement has no bearing on VirtaMove's patent infringement claims, which are not alleged to have ***any*** relationship to VirtaMove's "access to and use of" Amazon's services. Amazon's Second Amended Counterclaims do not solve the problems VirtaMove identified in its Motion to Dismiss. Dkt. 60.

Second, even if Amazon's strained reading of the AWS Customer Agreement to apply ***beyond*** its stated scope were accepted, Amazon's second and third counterclaims should still be dismissed because the alleged waiver is unenforceable under federal law, which requires a waiver of the Seventh Amendment right to a jury trial to be made both "knowingly" and "voluntarily" to be effective. VirtaMove's alleged waiver of its Seventh Amendment right to a jury trial was ***not*** made knowingly or voluntarily, at least because Amazon inconspicuously buried the alleged waiver provision deep within the nondescript "Miscellaneous" section of the agreement such that VirtaMove would not have recognized the alleged import of that provision.

Due to Amazon's continued failure to properly state a plausible factual basis for a declaratory judgment of contract rights and for breach of the contract, the Court should dismiss Amazon's second and third counterclaims in their entirety.

1

## II.     FACTUAL BACKGROUND

In its First Amended Counterclaims (Dkt. 58), Amazon requested a judicial declaration that VirtaMove was and is contractually bound by the AWS Customer Agreement ("Agreement") and has therefore waived its right to a jury trial in this case. Dkt. 58 at 10-11 ("Second Counterclaim"). Amazon also alleged that VirtaMove has breached the AWS Customer Agreement by seeking a jury trial in this case. Dkt. 58 at 11-12 ("Third Counterclaim"). VirtaMove moved to dismiss the First Amended Counterclaims on September 12, 2024. Dkt. 60. In lieu of opposing that motion, Amazon filed its Second Amended Counterclaims (Dkt. 61), mooting VirtaMove's Motion to Dismiss, and re-alleging the applicability of the AWS Customer Agreement to this case.

The Agreement, by its own terms, "contains the terms and conditions that govern [VirtaMove's] access to and use of the Services" which are later defined as "the services made available by us or our affiliates." Dkt. 61-1 at 2, 27. VirtaMove's alleged access to and use of Amazon's Services includes "offer[ing] [VirtaMove's] software for sale on the AWS Marketplace since 2021" and the use of "storage and virtual machine[]" services. Dkt. 61 at 10-11.

The only limitation of the Agreement that Amazon purports to give rise to an actual and justiciable controversy is Section 11.5(a), which states that "if for any reason a claim proceeds in court rather than in arbitration we and you waive any right to a jury trial." *Id.* at 12. As noted above, Amazon's counterclaims contend that this provision applies to VirtaMove's allegations of patent infringement in this litigation, which Amazon does not allege to be related to VirtaMove's "access to and use of the Services" as defined in the Agreement. *See* Dkt. 61-1 at 2.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must include facts sufficient to state a claim to relief that is plausible on its face. *See Bell Atl. Corp.*

2

*v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint need not contain "detailed factual allegations" to survive a motion to dismiss for failure to state a claim upon which relief can be granted, *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted), it must state "more than labels and conclusions": "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S.662 678 (2009) (quoting *Twombly*, 550 U.S. at 557). As the Supreme Court noted in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

In evaluating a Rule 12 motion, the court may consider, in addition to the complaint itself, "documents [that] are central to the pleadings and are uncontested... without treating the motion as one for summary judgment." *Transportation Mgmt. Servs., Inc. v. Hiscox Ins. Co., Inc.*, No. 1:23-CV-00740-ADA, 2024 WL 1125097, at *2 (W.D. Tex. Feb. 12, 2024) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)); *see also Topstone Commc'ns, Inc. v. Xu*, No. 4:22-CV-00048, 2024 WL 1517637, at *2 (S.D. Tex. Apr. 8, 2024) ("[C]ourts may also consider documents that a defendant attaches to its motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim.").

The Fifth Circuit has explained that an express waiver of the Seventh Amendment right to a jury trial requires that the party waiving the right do so voluntarily and knowingly based on the facts of the case. *Pizza Hut L.L.C. v. Pandya*, 79 F.4th 535, 540-41 (5th Cir. 2023). Courts will indulge every reasonable presumption against a waiver of that right. *Jennings v. McCormick*, 154 F.3d 542, 545 (5th Cir. 1998); *Solis v. County of Los Angeles*, 514 F.3d 946, 953 (9th Cir. 2008).

3

## IV. ARGUMENT

### A. The AWS Customer Agreement does not apply to VirtaMove's infringement allegations.

As an initial matter, the Court should dismiss Amazon's second and third counterclaims as a matter of law. The counterclaims assert that the AWS Customer Agreement covering VirtaMove's "access to and use of [Amazon's] Services" should be interpreted to waive VirtaMove's jury rights with respect to patent infringement allegations that have nothing to do with VirtaMove's access to and use of Amazon's services.

More specifically, the very first sentence of the AWS Customer Agreement states:

> This AWS Customer Agreement (this "Agreement") contains the terms and conditions that govern *your access to and use of the Services* (as defined below) and is an agreement between the applicable AWS Contracting Party specified in Section 12 below (also referred to as "AWS," "we," "us," or "our") and you or the entity you represent ("you" or "your").

Dkt. 61-1 at 2 (emphasis added). The term "Services" is later defined as including "[e]ach of the services made available by us or our affiliates." *Id.* at 27.

In the present action, VirtaMove alleges that Amazon unlawfully infringes VirtaMove's patents. *See, e.g.*, Dkt. 23 (VirtaMove's First Amended Complaint) at ¶ 15 ("On information and belief, Defendant makes, uses, offers for sale, sells, and/or imports certain products ('Accused Products'), such as, e.g., Amazon's AWS End-of-Support Migration Program ('EMP'), that directly infringe . . . ."). The jury waiver provision of the Agreement simply does not apply to these infringement allegations, because they are entirely unrelated to VirtaMove's "access to and use of the Services" as defined by the Agreement.

The only Amazon "Services" VirtaMove is alleged to have accessed and used are "offer[ing] its software for sale on the AWS Marketplace since 2021" and "join[ing] the AWS Partner Network in 2021," and use of "storage and virtual machine[]" services. Dkt. 61 at 10-11.

4

Amazon has never alleged that *Virtamove's* usage of Amazon services relates to the infringement allegations in this case. Nor could they; VirtaMove is obviously not alleging that its own access to or use of Amazon's services infringes.

Because the Agreement makes explicit that it "govern[s] [VirtaMove's] access to and use of the Services," it cannot apply to VirtaMove's patent infringement allegations which have nothing whatsoever to do with VirtaMove's access to and use of Amazon's services.

Washington contract law governs the interpretation of the scope of the jury waiver in the AWS Customer Agreement. *See, e.g.*, *BMC Software, Inc. v. Int'l Bus. Machines Corp.*, No. CV H-17-2254, 2018 WL 7291425, at *3 (S.D. Tex. Aug. 30, 2018) ("[C]ontract interpretation on the scope of the jury waiver provision is analyzed under [state] law, while the enforceability of the jury waiver provision is analyzed under federal law."). Under Washington state law, a valid contract requires mutual assent or a "meeting of the minds" on the essential terms. *Saluteen-Maschersky v. Countrywide Funding Corp.*, 105 Wn. App. 846, 851 (2001). Washington follows the objective manifestation theory of contracts where "we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than the unexpressed subjective intent of the parties." *Hearst Commc'n, Inc. v. Seattle Time Co.*, 154 Wn.2d 493, 503 (2005). Therefore, "mutual assent of the parties must be gleaned from their outward manifestations." *Saluteen-Maschersky*, 105 Wn. App. at 854.

Here, there was no "meeting of the minds" that VirtaMove waived a jury trial to patent infringement suits. The agreement expressly states that it pertains to *VirtaMove's* "access to" and "use of" Amazon's services, and nowhere states that it would apply to any usage of Amazon services *other than* by VirtaMove. Amazon's interpretation of the Agreement, which would apply the Agreement to govern VirtaMove's rights regarding *anyone's* use of Amazon services, reads a

routine customer agreement that relates to the customer relationship between VirtaMove and Amazon as including into a broad waiver of rights applicable to entirely unrelated matters. This interpretation should be rejected as plainly inconsistent with the very first sentence of the Agreement.

Accordingly, the Court should dismiss Amazon's second and third counterclaims from VirtaMove's action for patent infringement as a matter of law because the Agreement, by its own terms, governs *VirtaMove's* use of Amazon's services, which is unrelated to VirtaMove's allegations of infringement.

### B. The alleged waiver of Seventh Amendment rights is unenforceable because it was not made knowingly or voluntarily.

Even if Amazon's strained reading of the agreement as including a waiver of the right to a jury trial for an infringement action wholly unrelated to VirtaMove's use of Amazon's services *were* accepted, Amazon's second and third counterclaims should still be dismissed because the alleged waiver of Seventh Amendment rights is not enforceable under federal law.

Because the right to a jury trial is guaranteed under the Seventh Amendment, federal law governs the question of waiver. *See Brookhart v. Janis*, 384 U.S. 1, 4 (1966) ("The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law."). The right to a jury trial "is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." *Dimick v. Schiedt*, 293 U.S. 474, 486 (1935) (quoted by *Pizza Hut*, 79 F.4th at 540). Accordingly, an express waiver of jury rights "***requires*** . . . that the party waiving such right do so 'voluntarily' and 'knowingly' based on the facts of the case." *Pizza Hut*, 79 F.4th at 541 (quoting *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed. Cir. 1990)).

6

Courts in the Fifth Circuit generally consider four factors in determining whether a pre-dispute jury waiver is both knowing and voluntary: "(1) whether both parties had an opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining power of the parties, and (4) the business acumen or professional experience of the party opposing the waiver." *Pizza Hut*, 79 F.4th at 544. In evaluating these factors, "courts will indulge every reasonable presumption against a waiver of the right to a jury trial." *Abad v. Maxum Petroleum Operating Co.*, Case No. MO:16-CV-00001-RAJ, 2016 WL 11261305, at *4 (W.D. Tex. Oct. 14, 2016).

Here, the relevant considerations weigh strongly against a finding that the alleged waiver provision was knowing and voluntary, and thus weigh strongly against enforceability of that provision.

### 1. The inconspicuous nature of the waiver weighs heavily against a finding that the alleged waiver was "knowing" and "voluntary."

"Courts determine the conspicuousness of jury waiver clauses on a case-by-case basis, and consider factors such as the typeface, the length of the document, and the location of the waiver clause." *Zavala v. Aaron's, Inc.*, No. 4:15-CV-0123, 2015 WL 5604766, at *2 (E.D. Tex. Sept. 23, 2015). Specifically, courts will look at "whether the provision was in bold-face or conspicuous type." *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, No. 4:16-CV-01282, 2017 WL 3887235, at *3 (S.D. Tex. Sept. 5, 2017); *see also Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 622 (N.D. Tex. Aug. 30, 2018) (finding "all in capital lettering and mostly bold-faced font" to be conspicuous); *Jones*, 2017 WL 3887235, at *3 (finding waiver language "is in bold-face type and is the only bold-face text on the page" to be conspicuous); *Abad v. Maxum Petroleum Operating Co.*, No. MO:16-CV-00001-RAJ, 2016 WL 11261305, at *4 (W.D. Tex. Oct. 14, 2016) (finding that jury trial waiver language was not conspicuously placed where "the

7

language of the waiver [was] not emphasize with bold type or capital letters; rather, the words of the jury trial waiver are in small, regular type"); *Zavala*, 2015 WL 5604766, at *2 (finding waiver language in a separate paragraph, in bold, underlined type to be conspicuous); *Martelack v. Toys R US*, No. CV 13-7098, 2016 WL 762656, at *7 (D.N.J. Feb. 25, 2016) (finding a lack of conspicuousness where "[t]he waiver provision was just one of many provisions in the Privacy Agreement, it was placed somewhere in the middle of the text, and it was set forth in the same text size as the rest of the agreement").

Here, the non-bold-faced type jury trial waiver is found in the penultimate sentence of a subparagraph within the "***Miscellaneous***" section of the AWS Customer Agreement. *See* Dkt. 61-1 at ¶11.5(a). One would never know from the "Miscellaneous" title of the section that the section might contain an important waiver of constitutional rights. And the jury waiver sentence was buried partway through that nondescript "Miscellaneous" section.

Logically, the drafter of a contract should take special care to emphasize provisions that waive constitutional rights, especially when the waiver of rights is alleged to go far beyond the scope of the contract as described in the contract's introduction (i.e., beyond the scope of "your access to and use of the Services"—Dkt. 61-1 at 1). Yet the non-bold treatment of the purported jury waiver is in stark contrast to an entirely bold-faced font subparagraph found in the same list. *Id.* at ¶11.5(c). Without any bolding, underlying, use of all-caps, or a generalized paragraph title, this jury trial waiver is not conspicuous (particularly when buried in the entirely non-descript "Miscellaneous" section). *See Abad*, 2016 WL 11261305, at *4 (faulting drafter of agreement for not emphasizing waiver provision with bold, capital, or enlarged text, even where the waiver section title itself emphasized "Jury Trial Waiver" with "bold type"). Other than perhaps an intentional decrease in font size, it is difficult to imagine this important (and unexpected) waiver

of rights as being any *less* conspicuous. *Cf. Pizza Hut L.L.C. v. Pandya*, 79 F.4th 535, 545 (5th Cir. 2023) (suggesting that "plac[ing] the waiver in the middle of a paragraph of inconsequential terms that are easily skippable" would be problematic).

The extraordinarily inconspicuous nature of the alleged waiver weighs heavily against a finding that the waiver was "knowing" and "voluntary" as is required for waiver.

### 2. The non-negotiability of the Agreement also weighs against waiver.

In assessing the negotiability of a contract, courts ask whether there was actual negotiation over contract terms. *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, 328 F. Supp. 3d 598, 621 (N.D. Tex. 2018) (citations omitted); *see also Pizza Hut L.L.C.*, 79 F.4th at 545 (noting that a party's "active participation in negotiations over the contract, including over the paragraph containing the waiver, distinguishes this case from the cases that Pandya relies on"). "[T]he question is whether there was an opportunity for negotiation." *Id.* at 622 (citing *Jones v. Tubal-Cain Hydraulic Sols., Inc.*, 2017 WL 3887235, at *1-2 (S.D. Tex. Sept. 5, 2017)).

As VirtaMove's testimony confirms this was a ***click-wrap agreement*** that was not negotiated:

> Q. So, do you remember what prompted you to register an AWS account for VirtaMove in 2021?
> A. I don't remember but I would have been asked by one of my colleagues to create that account.
> Q. And do you remember registering for the AWS account in 2021?
> A. Vaguely. I register for lots of accounts.
> Q. And do you remember agreeing to the AWS Customer Agreement in March 2021?
> A. I don't remember that, no.
> Q. Do you doubt that you agreed to the AWS Customer Agreement in March of 2021?
> **A. If it is a click through, where you have to say I agree; is that what you are referring to?**
> Q. It would be something shown on the website when you register.
> A. Right.
> [objection]

9

> Q. Do you doubt that you agreed to the AWS customer agreement in March of 2021?
> A. I have no reason to doubt it.

Ex. 3 (Cameron Depo. Tr. at 124:9-125:14).

In *Servicios*, there was no evidence that the parties engaged in actual negotiations or that the promise had any real opportunity to negotiate the terms of the agreements in question where, *inter alia*, the promise stated in his declaration that "[t]he only opportunity I had to read the agreements was at the closing table. Further, I was not allowed to make any changes to the underlying documents." 328 F. Supp. 3d at 621-622. Like the promise in *Servicios*, here, VirtaMove never participated in any form of a negotiation process whatsoever because the AWS Customer Agreement is a click-through agreement shown to AWS users during registration. *See Herzog v. Superior Court of San Diego County*, 101 Cal. App. 5th 1280, 1298 (4th Dist. 2024) (holding that users interacting with the clickwrap agreement would have no reason to believe that by clicking the checkbox next to "I agree to the Terms of Use" they were entering an agreement that concerned any matters other than the scope of the user's privacy waiver and management of the user's personal information); *Dickson v. Dexcom Inc.*, No. 2:24-CV-00121, 2024 WL 3417392, at *4 (W.D. La. July 15, 2024) (denying a motion to compel arbitration where clickwrap agreement "only indicates that the user is consenting to arbitration for claims arising from her use of the app. It does not advise her that use of the G6 device, which does not require the app, is also subject to the Dexcom Terms of Use. . . . [T]he [agreement] here fails to provide a reasonable user with notice that she is waiving her right to pursue any claims arising from a medical device merely by installing the associated app."); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers.").

Because VirtaMove was not involved in any actual negotiation of the terms of the Agreement (and could not have negotiated those terms[1] due to the Agreement's click-wrap nature), that is still further reason to find the alleged waiver is unenforceable as not being entered into "knowingly" and "voluntarily."

### 3. Neither of the last two factors (relative bargaining power and business acumen / professional experience) render the alleged waiver enforceable.

As shown above, both the inconspicuous nature of the Agreement and its non-negotiability show that the alleged waiver was not agreed to knowingly and voluntarily; VirtaMove would not have reasonably been aware of the waiver provision, and had no opportunity to negotiate it.

The other two factors courts consider in evaluating whether a waiver was knowing and voluntary are relative bargaining power between the parties, and the business acumen and professional experience of the party opposing the waiver. *See Pizza Hut*, 79 F.4th at 544. Neither of these factors changes the conclusion that waiver was not knowing and voluntary.

Regarding relative bargaining power, a massive company like Amazon plainly has more bargaining power than a relatively small company like VirtaMove who is not alleged to make significant use of Amazon's services. However, VirtaMove acknowledges that courts' consideration of "relative bargaining power" focuses on whether the party with less bargaining power had "the kind of 'extreme bargaining disadvantage' or 'gross disparity in bargaining position' that occurs only in certain exceptional situations." *Pizza Hut*, 79 F.4th at 544.

---

[1] In its Second Amended Counterclaims, Amazon notes that "AWS sometimes negotiates terms with individual customers." Dkt. 61 at 11. Tellingly, Amazon does not allege that Amazon has *ever* negotiated the jury waiver term with any customer, much less a relatively small customer like VirtaMove. Even *if* the term at issue *were* negotiable for larger companies with more bargaining power, there is no plausible allegation that the term could have been negotiated by VirtaMove.

11

VirtaMove does not contend that its disadvantage in bargaining power was so "extreme" that this disparity, standing alone, would justify unenforceability of the alleged jury waiver provision. However, even if the parties had been of *equal* bargaining power, that would not transform the alleged waiver provision into a knowing and voluntary one, because the waiver was inconspicuously buried partway through the "Miscellaneous" section of the Agreement and VirtaMove had no opportunity to negotiate it. And to the extent Amazon intends to assert that the terms of the Agreement might have been negotiable by VirtaMove in relation to the "non-negotiability" factor addressed above, bargaining power is highly relevant because there is no indication that Amazon would have negotiated the generalized AWS Customer Agreement with a relatively small customer lacking in bargaining power such as VirtaMove.

A similar conclusion applies to the professional experience and business acumen consideration. "A party has sufficient business acumen if they are able to understand the import of a jury waiver provision." *Zavala v. Aaron's, Inc.*, No. 4:15-CV-123, 2015 WL 5604766, at *2 (E.D. Tex. Sept. 23, 2015). As such, business acumen needs to be evaluated in conjunction with the difficulty of understanding the waiver provision at issue. *Id.* Assuming that the waiver ***does*** apply to claims for patent infringement unrelated to VirtaMove's access to and use of Amazon's services, VirtaMove would not have been able to understand its import in the alleged manner, because it is directly contrary to the very first paragraph of the Agreement. Dkt. 1-1 at 1 ("This AWS Customer Agreement (this 'Agreement') contains the terms and conditions that govern your access to and use of the Services…."). After all, VirtaMove *continues* to believe the alleged waiver is inapplicable to the instant litigation, as explained above in Section IV.A; even if Amazon is correct that the Agreement ***could*** apply beyond its stated scope, the Agreement is at best ambiguous on that point such that VirtaMove could not have been expected to "understand the

12

import" of the jury waiver provision as Amazon seeks to apply it. *Zavala*, 2015 WL at *2. In any event, in the context of the facts of this case, the business acumen consideration is largely inconsequential given how strongly the non-negotiability of the Agreement and the inconspicuous nature of the alleged waiver weigh against a finding that the waiver was knowing and intentional. *See Zavala*, 2015 WL 5604766 at *2 (finding the business acumen factor neutral even when "the language of the jury waiver is unambiguous").

Accordingly, in light of the totality of the relevant factors, the waiver is unenforceable because there is no evidence that it was entered into knowingly and voluntarily as the law requires.

## V. CONCLUSION

For the foregoing reasons, VirtaMove respectfully requests that the Court dismiss Amazon's counterclaim seeking a declaratory judgment of contractual rights and Amazon's counterclaim for breach of contract.

Dated: October 17, 2024              Respectfully submitted,

                                     By: */s/ Reza Mirzaie*

                                     Reza Mirzaie (CA SBN 246953)
                                     rmirzaie@raklaw.com
                                     Marc A. Fenster (CA SBN 181067)
                                     mfenster@raklaw.com
                                     Neil A. Rubin (CA SBN 250761)
                                     nrubin@raklaw.com
                                     James A. Milkey (CA SBN 281283)
                                     jmilkey@raklaw.com
                                     Amy E. Hayden (CA SBN 287026)
                                     ahayden@raklaw.com
                                     Jacob Buczko (CA SBN 269408)
                                     jbuczko@raklaw.com
                                     James Tsuei (CA SBN 285530)
                                     jtsuei@raklaw.com
                                     Christian W. Conkle (CA SBN 306374)

cconkle@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
Daniel B. Kolko (CA SBN 341680)
dkolko@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Qi (Peter) Tong (TX SBN 24119042)
**RUSS AUGUST & KABAT**
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (310) 826-7474

*Attorneys for Plaintiff VirtaMove, Corp.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3) on October 17, 2024.

*/s/ Reza Mirzaie*
Reza Mirzaie
