# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

| | |
|---|---|
| VIRTAMOVE, CORP., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; AND AMAZON WEB SERVICES, INC., <br><br> Defendant. | Case No. 7:24-CV-00030-ADA-DTG |

**AMAZON'S OPENING CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

Page No.

INTRODUCTION ---------------------------------------------------------------------------------- 1

LEGAL STANDARD ------------------------------------------------------------------------------- 1

ARGUMENT ---------------------------------------------------------------------------------------- 2

    I.        The Claims of the '814 Patent are Indefinite ------------------------------------------ 2

           A.       "disparate computing environments" (claim 1)------------------------------ 3

           B.       "container" (claim 1) --------------------------------------------------------- 5

    II.       The Claims of the '058 Patent are Indefinite ------------------------------------------ 7

           A.       "critical system elements" (claim 1) ------------------------------------------ 7

           B.       "functional replicas" (claim 1) -------------------------------------------------10

           C.       "shared library" (claim 1)--------------------------------------------------11

           D.       "forms a part of … software applications" (claim 1) -----------------------12

CONCLUSION-------------------------------------------------------------------------------------13

## TABLE OF AUTHORITIES

*Case(s)* *Page(s):*

*Abbott Labs. v. Andrx Pharms., Inc.*,
  473 F.3d 1196 (Fed. Cir. 2007) ............................................................................... 3

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008) ............................................................................... 9

*ACQIS LLC v. Alcatel–Lucent USA Inc.*,
  No. 6:13-cv-00638, 2015 WL 1737853 (E.D. Tex. Apr. 13, 2015) ...................... 11

*Andersen Corp. v. Fiber Composites, LLC*,
  474 F.3d 1361 (Fed. Cir. 2007) ...................................................................... 12, 13

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
  No. CV 12–2692, 2016 WL 6832623 (D. Minn. Nov. 18, 2016) .......................... 8

*Automated Bus. Cos. v. ENC Tech. Corp.*,
  No. CIV H-06-1032, 2009 WL 3190448 (S.D. Tex. Sept. 30, 2009) ..................... 9

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
  783 F.3d 1374 (Fed. Cir. 2015) ............................................................................... 2

*Ernie Ball, Inc. v. Earvana, LLC*,
  502 F. App'x 971 (Fed. Cir. 2013) .......................................................................... 2

*Halliburton Energy Services, Inc. v. M-I LLC*,
  514 F.3d 1244 (Fed. Cir. 2008) ..................................................................... 1, 3, 8

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) ......................................................................... 2, 10

*Jawbone Innovations, LLC v. Google LLC*,
  No. 6:21-cv-00985-ADA (W.D. Tex. Oct. 14, 2022) ........................................... 11

*Jawbone Innovations, LLC v. Meta Platforms, Inc.*,
  No. 6:23-cv-00158-ADA (W.D. Tex. Aug. 7, 2024) ............................................ 11

*Magēmā Tech. LLC v. Phillips 66*,
  No. CV H-20-2444, 2021 WL 3186532 (S.D. Tex. Jul. 28, 2021) ....................... 11

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
  579 F.3d 1363 (Fed. Cir. 2009) ........................................................................... 1, 3

*Mirror Imaging, LLC v. Bank of Am., N.A.*,
  No. 6:21-cv-00463-ADA (W.D. Tex. Feb. 22, 2022) ............................................. 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) ................................................................................................ 2

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
    884 F.3d 1350 (Fed. Cir. 2018) ............................................................................ 10

*Parkervision, Inc. v. Vidal*,
    88 F.4th 969 (Fed. Cir. 2023) ................................................................................. 6

*Signal IP v. Am. Honda Motor Co., Inc.*,
    No. LA-CV14-02454-JAK-JEMx, 2015 WL 5768344 (C.D. Cal. Apr. 17,
    2015) ....................................................................................................................... 9

*TVnGO Ltd. (BVI) v. LG Elecs. Inc.*,
    861 F. App'x 453 (Fed. Cir. 2021) ......................................................................... 4

*U.S. Well Servs., Inc. v. Halliburton Co.*,
    No. 6:21-CV-00367-ADA, 2022 WL 819548 (W.D. Tex. Jan. 17, 2022) ............. 2

*Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*,
    No. 2:18-cv-00506-JRG, 2020 WL 248880 (E.D. Tex. Jan. 16, 2020) ................ 10

*United States Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997) ........................................................................ 6, 12

*Virtual Sols., LLC v. Microsoft Corp.*,
    925 F. Supp. 2d 550 (S.D.N.Y. 2013) .................................................................... 4

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ................................................................................ 1

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999) ................................................................................ 6

**Statutes and Rules**

35 U.S.C. § 112 .............................................................................................................. 2

## INTRODUCTION

Plaintiff ("VirtaMove") alleges that Defendants (collectively, "Amazon") infringe claims in U.S. Patent Nos. 7,519,814 ("the '814 patent") and 7,784,058 ("the '058 patent"). Both patents generally relate to computer software. The patents provide express definitions of many terms used in their claims. These express definitions are controlling.

For three of the claim terms, the patents' express definitions are subjective. Because the intrinsic record provides no objective boundaries for these subjectively defined terms, a person of ordinary skill in the art would be unable to ascertain the scope of the claims with reasonable certainty. At least one of the subjectively defined terms appears in each claim asserted here. Thus, all asserted claims are invalid for indefiniteness.

If the Court holds the asserted claims indefinite, it need not reach Amazon's three remaining proposals. Two of the remaining proposals are taken from the patent's express definitions. The last proposal is dictated by an argument the applicant made to distinguish prior art during prosecution. VirtaMove proposes no competing constructions.

## LEGAL STANDARD

"[A] patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "When a patentee explicitly defines a claim term in the patent specification, the patentee's definition controls." *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009). A patentee's definition can render a term indefinite "if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1251 (Fed. Cir. 2008).

1

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). When a claim incorporates a subjective term of degree, "the court must determine whether the patent provides some standard for measuring that degree" or "the scope of the [term]." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015); *Ernie Ball, Inc. v. Earvana, LLC*, 502 F. App'x 971, 980 (Fed. Cir. 2013). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014); *U.S. Well Servs., Inc. v. Halliburton Co.*, No. 6:21-CV-00367-ADA, 2022 WL 819548, at *4 (W.D. Tex. Jan. 17, 2022). Such objective boundaries ensure that the claim scope does not depend "'on the unpredictable vagaries of any one person's opinion.'" *Interval Licensing*, 766 F.3d at 1371.

**ARGUMENT**

The Court should construe the claims in accordance with the patents' lexicography. Where the lexicography is subjective and the intrinsic record provides no objective boundaries, the Court should hold the claims indefinite under 35 U.S.C. § 112.

**I.     THE CLAIMS OF THE '814 PATENT ARE INDEFINITE.**

The '814 patent is entitled "System for containerization of application sets." It relates to containerization, a process in which software applications are placed in a "container" that includes "all files required to successfully execute [the] applications on a computing platform." (Dkt. 1-1 at 7:22–29.) The patent explains that applications run securely in containers because they can access files in their container but cannot access files outside of the container. (*Id.* at 8:66–9:7.)

2

VirtaMove asserts claim 1 of the '814 patent along with eight of its dependent claims.[1] Claim 1 requires "disparate computing environments," but this phrase lacks objective boundaries as explained below. Thus, claim 1 is indefinite. The dependent claims are also indefinite because none of them resolve the uncertainty in claim 1. (Long Decl. ¶¶ 33–39.)

### A. "disparate computing environments" (claim 1)

| VirtaMove's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary; plain and ordinary meaning. | Indefinite |

Claim 1 of the '814 patent recites "a system having a plurality of servers … operating in disparate computing environments." (Dkt. 1-1 at claim 1.) This term appears in the preamble of the claim. (*Id.*) The parties agree that the preamble is limiting here. (Ex. 1.) Because the preamble is limiting, the meaning of "disparate computing environments" impacts the claim's scope.

The specification expressly defines "disparate computing environments" as follows:

> Disparate Computing Environments: Environments where computers are *stand-alone* or where there are plural computers and where they are *unrelated*.

(Dkt. 1-1 at 2:16–19 (emphasis added).) This statement is lexicography because the specification clearly states "[t]he following definitions are used herein" (*id*. at 2:16) before providing the definition. *See Abbott Labs. v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007) ("as used herein, means . . ." is definitional). This lexicography is controlling. *Martek*, 579 F.3d at 1380. But a person of ordinary skill in the art ("POSITA") attempting to apply this lexicography would be unable to discern the boundaries of claim 1 with reasonable certainty for two reasons. *See Halliburton Energy*, 514 F.3d at 1251 (patentee's definition rendered claim indefinite).

---

[1] Asserted claims 2, 4, 6, 8, 9, 10, 13, and 14 all depend directly or indirectly from claim 1.

3

First, the definition fails to provide objective boundaries because "unrelated" is subjective; people may reasonably disagree about whether two things are related or unrelated. Accordingly, this Court has held that a claim term requiring two entities to be "distinct or related" was indefinite. *Mirror Imaging, LLC v. Bank of Am., N.A.*, No. 6:21-cv-00463-ADA, Dkt. 29 (W.D. Tex. Feb. 22, 2022). The Court should reach the same conclusion here. The intrinsic record never explains how to determine whether two computers are unrelated, as the lexicography requires. (Long Decl. ¶ 35.) Thus, a POSITA would be unable to discern with reasonable certainty whether the "disparate computing environments" limitation is satisfied. (*Id.*)

Second, even if "unrelated" is not indefinite by itself, it renders claim 1 indefinite because it contradicts other requirements of the claim. Specifically, claim 1 recites that a "plurality" of servers (i.e., multiple servers) are part of a single "system." A POSITA would understand that, for multiple servers to form a single system, they must somehow be related to each other (e.g., networked or otherwise connected). (Long Decl. ¶ 36.) But this contradicts the lexicography, which requires the computers to be "stand-alone" or "unrelated." (*Id.*) Nothing in the patent or prosecution history explains how multiple computers can be part of the same system and yet be stand-alone or unrelated. (*Id.* ¶¶ 36–37.) This contradiction would prevent a POSITA from ascertaining the scope of claim 1 with reasonable certainty. *See TVnGO Ltd. (BVI) v. LG Elecs. Inc.*, 861 F. App'x 453, 458–60 (Fed. Cir. 2021) (contradiction between specification and claim language rendered claim indefinite); *see also Virtual Sols., LLC v. Microsoft Corp.*, 925 F. Supp. 2d 550, 569–70 (S.D.N.Y. 2013), *aff'd*, 540 F. App'x 997 (Fed. Cir. 2013) (claim was indefinite because it held two contradictory statements to both be true).

Because the applicant's lexicography controls the meaning of "disparate computing environments" but (1) fails to provide objective boundaries and (2) creates a contradiction, claim 1 and its dependent claims are indefinite.

### B. "container" (claim 1)

| VirtaMove's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary; plain and ordinary meaning. | An aggregate of files required to successfully execute a set of software applications on a computing platform is referred to as a container. Each container for use on a server is mutually exclusive of the other containers, such that read/write files within a container cannot be shared with other containers. A container comprises one or more application programs including one or more processes, and associated system files for use in executing the one or more processes; but containers do not comprise a kernel; each container has its own execution file associated therewith for starting one or more applications. |

If the Court holds the asserted claims of the '814 patent indefinite for the reasons explained in the previous section, it need not construe "container." If the Court reaches the "container" term, it should be construed according to the patent's lexicography.

Claim 1 recites "storing in memory accessible to at least some of the servers a plurality of secure *containers* of application software." (Dkt. 1-1 at claim 1 (emphasis added).) The specification expressly defines "container" as follows:

> The following definitions are used herein:
> . . . .
> Container: An aggregate of files required to successfully execute a set of software applications on a computing platform is referred to as a container . . . . Each container for use on a server is mutually exclusive of the other containers, such that read/write files within a container cannot be shared with other containers . . . . A container comprises one or more application programs including one or more processes, and associated system files for use in executing the one or more processes; but containers do not comprise a kernel; each container has its own execution file associated therewith for starting one or more applications.

5

(*Id*. at 2:23–42.)  This is lexicography.  *See Parkervision, Inc. v. Vidal*, 88 F.4th 969, 976 (Fed. Cir. 2023) ("as used herein" and "refer to" established lexicography).

Amazon's proposed construction is taken from the patent's definition but omits portions of that definition for the sake of brevity.  The omitted portions are indicated by ellipses in the block quote above.  They are omitted for two reasons explained below, but Amazon does not object to including them if the Court prefers to do so.

First, some portions of the patent's "container" definition are omitted from the proposed construction because they are already recited elsewhere in the claim.  Including these portions in the construction would be redundant, so the Court need not include them.  *United States Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction "is not an obligatory exercise in redundancy").  For example, the patent's definition states that "containers do not comprise a kernel."  (Dkt. 1-1 at 2:37.)  The proposed construction omits this statement because the claim already requires "containers … *excluding a kernel*."  (*Id.* at claim 1 (emphasis added).)

Second, some portions of the patent's definition are omitted from the proposed construction because they are not material to any disputed issue.  For example, the patent's definition explains that "[a] container is not a physical container but a grouping of associated files[.]" (*Id.* at 2:25-26.) Amazon's proposed construction omits this portion because it is not in dispute; no party is relying on a physical container to satisfy the claim limitation.  *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").

Because the patent's lexicography is controlling, the Court should adopt Amazon's proposed construction.  VirtaMove proposes no competing construction and has no basis for ignoring the patent's lexicography.

6

## II. THE CLAIMS OF THE '058 PATENT ARE INDEFINITE.

The '058 patent is entitled "Computing system having user mode critical system elements as shared libraries." It relates to replicating so-called "critical system elements" from an operating system's kernel (i.e., the protected core of the operating system) to a shared library that can be accessed by applications outside of the kernel. (Dkt. 1-3 at 1:46–48, 5:22–34.)

VirtaMove asserts claim 1 of the '058 patent along with six of its dependent claims.[2] Claim 1 requires "critical system elements" (CSEs) that are "functional replicas" of other CSEs. But the patent's definitions of these two phrases lack objective boundaries as explained below. Thus, claim 1 is indefinite. The dependent claims are also indefinite because none of them resolve the uncertainty in claim 1. (Long Decl. ¶¶ 40–58.)

### A.   "critical system elements" (claim 1)

| VirtaMove's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| Any service or part of a service, "normally" supplied by an operating system, that is critical to the operation of a software application. | Indefinite |

Claim 1 of the '058 patent recites "an operating system kernel having OS *critical system elements* (OSCSEs) for running in kernel mode using said processor; and, a shared library having shared library *critical system elements* (SLCSEs) stored herein for use by the plurality of software applications in user mode[.]" (Dkt. 1-3 at claim 1 (emphasis added).) The specification expressly defines "critical system elements" as follows:

> By way of introduction, a number of terms will now be defined.
> Critical System Element (CSE): Any service or part of a service, '*normally*' supplied by an operating system, that is *critical* to the operation of a software application.

---

[2] Asserted claims 2, 3, 4, 5, 10 and 18 all depend directly or indirectly from claim 1.

(*Id*. at 6:4–10 (emphasis added).)  VirtaMove agrees that the statement above is the definition of "critical system elements."  (Ex. 2 at 2.)

Applying the patent's definition, "critical system elements" is indefinite.  *See Halliburton Energy*, 514 F.3d at 1251 (definition rendered claim indefinite).  Specifically, the words "normally" and "critical" are subjective and make the claim scope uncertain.  (Long Decl. ¶¶ 42–43.)

Nothing in the intrinsic record supplies a POSITA with any objective standards for deciding whether or not a service was normally found in operating systems.  (*Id.* ¶ 42.)  Some services were more common than others, but the patent provides no objective boundaries on how common a service must be before it is considered normal.  *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, No. CV 12–2692 (JRT/LIB), 2016 WL 6832623, at *14–*17 (D. Minn. Nov. 18, 2016) (finding the term "normal operating condition" indefinite because there are no objective boundaries for measuring what constitutes "normal.").

The word "critical" is similarly vague.  Nothing in the intrinsic record supplies any objective standard for a POSITA to decide whether a service is critical to the operation of a software application.  (Long Decl. ¶¶ 43–44.)  A POSITA might be able to envision several different possibilities for defining "critical," but would not know which of these possibilities the lexicography encompasses.  For example: "[I]s a service 'critical' if an application crashes without it?  Is a service 'critical' if the application does not crash, but some of its functionality becomes inaccessible?  Is a service 'critical' if the application's functionality is accessible but performs unreliably or incorrectly?"  (*Id.* ¶ 43.)  The intrinsic record does not say.  (*Id.*)

Instead of providing objective boundaries, the patent provides a definition that is circular and therefore unhelpful.  A "critical" system element is defined as "critical" to a software applica-

8

tion. (Dkt. 1-3 at 6:6–10.) Because this definition uses the word critical to define itself, the definition gives no clarity to the claim. *See, e.g.*, *Signal IP v. Am. Honda Motor Co., Inc.*, No. LA-CV14-02454-JAK-JEMx, 2015 WL 5768344, at *54–*56 (C.D. Cal. Apr. 17, 2015) (finding claim indefinite where "the claim presents circular language" and "it would be difficult for an expert to pinpoint" the meaning of the term); *Automated Bus. Cos. v. ENC Tech. Corp.*, No. CIV H-06-1032, 2009 WL 3190448, at *20–*21 (S.D. Tex. Sept. 30, 2009) (finding construction of "valid logon command" as "a 'logon command' that has been confirmed … to be valid …" to be "circular, confusing and unnecessary"); *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) (claim construction "usually requires use of words other than the words that are being defined").

Extrinsic evidence confirms that "critical" lacks any objective boundaries. For example, the Authoritative Dictionary of IEEE Standards Terms ("IEEE Dictionary") is a technical dictionary used in computer engineering and related fields. (Ex. 3.) This dictionary does not define "critical" but includes several definitions showing how the word was used in connection with computer software. (Long Decl. ¶¶ 45–48.) For example, the IEEE Dictionary defines "criticality" as a term of degree that is subjective:

> **criticality** (1) (power operations) The state of an assembly of fissionable material in which a stable, self-sustaining chain reaction exists. At this condition a nuclear reactor will produce energy at a constant rate and the effective multiplication factor keff is exactly equal to 1.   (PE/PSE) 858-1987s
> (2) (software) The *degree* of impact that a requirement, module, error, fault, failure, or other item has on the development or operation of a system. *Synonym:* severity.
>   (C) 610.12-1990
> (3) A *subjective* description of the intended use and application of the system. Software criticality properties may include safety, security, complexity, reliability, performance, or other characteristics.   (C/SE) 1012-1998

(Ex. 3 at 4.)

9

Because there is no objective standard for measuring the terms "normally" and "critical," which define the scope of claim 1, the claim is indefinite. *Interval Licensing*, 766 F.3d at 1371.

### B. "functional replicas" (claim 1)

| VirtaMove's Position | Amazon's Proposed Construction |
|---|---|
| No construction necessary; plain and ordinary meaning. | Indefinite |

Claim 1 is indefinite for another, independent reason. The claim recites that "some of the SLCSEs stored in the shared library are functional *replicas* of OSCSEs[.]" (Dkt. 1-3 at claim 1 (emphasis added).) The specification expressly defines "replica" as follows:

> The term replica . . . is meant to denote a [critical system element (CSE)] having *similar attributes to, but not necessarily and preferably not an exact copy* of a CSE in the operating system (OS)[.]

(Dkt. 1-3 at 1:66–2:1 (emphasis added).) This is lexicography. *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018) ("the term … denotes" showed lexicography).

Under this express definition, the term "replicas" is indefinite. Specifically, the definition of "replica" requires a CSE having "similar attributes to" another CSE. (Dkt. 1-3 at 1:67.) The word "similar" is a term of degree because it calls for a subjective opinion about how much one thing resembles another. (Long Decl. ¶ 51.)

The patent's definition of "replica" does not specify how similar the two CSEs must be. Nor does anything else in the intrinsic record provide objective boundaries for measuring the required similarity. (Long Decl. ¶¶ 52–58 (addressing statements in specification and prosecution history).) Instead, the definition *forecloses* the only meaning of replica that would be objectively clear—namely, requiring a replica to be an exact copy. (*Id.* ¶ 51.) Thus, the requirement that a replica have "similar attributes" to a CSE but need not be an exact copy renders the claim indefinite. *See Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:18-cv-00506-JRG, 2020 WL 248880, at *23–*24 (E.D. Tex. Jan. 16, 2020) (finding "similar position" indefinite because it

10

lacked objective boundaries); *ACQIS LLC v. Alcatel–Lucent USA Inc.*, No. 6:13-cv-00638, 2015 WL 1737853, at *9–*10 (E.D. Tex. Apr. 13, 2015) (finding "similar in design" indefinite because it lacked objective boundaries); *see also Jawbone Innovations, LLC v. Google LLC*, No. 6:21-cv-00985-ADA, Dkt. 88 at 3–4 (W.D. Tex. Oct. 14, 2022) (finding "approximately similar" and "substantially similar" indefinite); *Jawbone Innovations, LLC v. Meta Platforms, Inc.*, No. 6:23-cv-00158-ADA, Dkt. 92 at 2–3 (W.D. Tex. Aug. 7, 2024) (same).

The Court should hold the asserted claims of the '058 patent indefinite for the reasons explained in the previous sections. If the Court does so, it need not construe the two remaining terms addressed below.

    C.    **"shared library" (claim 1)**

| VirtaMove's Proposed Construction | Amazon's Proposed Construction |
|---|---|
| No construction necessary; plain and ordinary meaning. | An application library code space shared among all user mode applications. |

Claim 1 of the '058 patent recites "a *shared library* having shared library critical system elements (SLCSEs) stored therein for use by the plurality of software applications in user mode[.]" (Dkt. 1-3 at claim 1 (emphasis added).) The specification expressly defines "shared library" as follows:

> By way of introduction, a number of terms will now be defined.
> . . . .
> *Shared library*: An application library code space shared among all user mode applications. The code space is different than that occupied by the kernel and its associated files. The shared library files are placed in an address space that is accessible to multiple applications.

(*Id.* at 6:4–5, 6:49–53 (emphasis added).) This is lexicography and the term should be construed accordingly. *See Magēmā Tech. LLC v. Phillips 66*, No. CV H-20-2444, 2021 WL 3186532, at *6–*8 (S.D. Tex. Jul. 28, 2021) (finding lexicography where patent said "terms are defined below").

11

Amazon's proposed construction includes the first sentence of the patent's definition. The rest of the definition is redundant or not in dispute, so the construction need not include it. *See U.S. Surgical,* 103 F.3d at 1568 (claim construction "is not an obligatory exercise in redundancy"). However, Amazon has no objection to including the entire definition if the Court prefers to do so.

D.  **"forms a part of … software applications" (claim 1)**

| VirtaMove's Position | Amazon's Proposed Construction |
|---|---|
| No construction necessary; plain and ordinary meaning | resides in the same address space as application code |

Claim 1 of the '058 patent also recites that "when one of the SLCSEs is accessed by one or more of the plurality of software applications it *forms a part of the one or more of the plurality of software applications*[.]" (Dkt. 1-3 at claim 1 (emphasis added).) During the prosecution, the applicant made the following argument to distinguish prior art:

> [The examiner's prior art] fails to disclose that when one of the SLCSEs is accessed by one or more of the plurality of software applications, it forms a part of the one or more of the plurality of software applications. In other words, the SLCSEs literally *form part of the application*. SLCSEs *reside in the same address space as application code*, in contrast to a proxy that is exclusive of the application.

(Ex. 4 at 10 (emphasis added).) This argument equates "form[ing] part of the application" with "resid[ing] in the same address space as application code." (*Id.*) Because the applicant relied on this understanding of the claim language to overcome the prior art, VirtaMove is bound by it. *E.g.*, *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007).

During prosecution of the patent in *Andersen*, the applicant relied on a distinction between a process in the prior art and a process according to the alleged invention that required an additional step of forming pellets. *Id.* at 1373. The Federal Circuit held that "[t]he prosecution history thus provides strong support [that the] claims should be narrowly construed" as requiring the "pelletization" step. *Id.* at 1373–75. Here, the applicant overcame a rejection by contrasting prior art

12

where a component was "exclusive of the application" with the alleged invention, in which SLCSEs "reside in the same address space as application code." (Ex. 4 at 10.) Thus, the Court should construe the claim as limited to SLCSEs that reside in the same address space as application code. *See Andersen*, 474 F.3d at 1374 ("an applicant's argument that a prior art reference is distinguishable on a particular ground" effectuated "a disclaimer of claim scope").

## CONCLUSION

Amazon's proposed constructions are dictated by the intrinsic record, including the patent's lexicography. The Court should hold all asserted patent claims indefinite because the lexicography fails to define the scope of the claims with reasonable certainty.

October 22, 2024

Respectfully submitted,

By: */s/ Jeremy A. Anapol*

Joseph R. Re (Pro Hac Vice)
Jeremy A. Anapol (Pro Hac Vice)
KNOBBE MARTENS OLSON & BEAR LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: 949-760-0404
Facsimile:  949-760-9502
joe.re@knobbe.com
jeremy.anapol@knobbe.com

Colin B. Heidman (Pro Hac Vice)
Christie R.W. Matthaei (Pro Hac Vice)
Logan P. Young (Pro Hac Vice)
KNOBBE MARTENS OLSON & BEAR LLP
925 4th Ave, Ste 2500
Seattle, WA 98104
Telephone: 206-405-2000
Facsimile:  206-405-2001

13

colin.heideman@knobbe.com
christie.matthaei@knobbe.com
logan.young@knobbe.com

Harper Estes
Texas Bar No.  00000083
hestes@lcalawfirm.com
LYNCH, CHAPPELL & ALSUP
A Professional Corporation
Suite 700
300 N. Marienfeld,
Midland, Texas 79701
Telephone: 432-683-3351
Telecopier: 432-683-2587

*Counsel for Defendants Amazon.com, Inc., Amazon.com Services, LLC and Amazon Web Services, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2024, all counsel of record who are deemed to have consented to electronic service were served with a copy of the foregoing via the Court's CM/ECF System.

/s/ *Jeremy A. Anapol*

Jeremy A. Anapol
