# EXHIBIT 1

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

MIDLAND/ODESSA DIVISION

_____

VIRTAMOVE, CORP.,                    )

        Plaintiff,            )

                          )   Case Number:

  V.                                 )   7:24-CV-00030

                          )

AMAZON.COM, INC.; AMAZON.COM  )

SERVICES LLC; and AMAZON WEB  )

SERVICES, INC.,                      )

        Defendants.           )

_____)

30(b)(6) DEPOSITION OF SUSAN CAMERON

ON BEHALF OF VIRTAMOVE, CORP.

August 27, 2024

11:02 a.m. Eastern Daylight Time

Reported by:  Lori J. Goodin, RPR, CRR, RSA,

California CSR #13959

_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 2

```
 1              REMOTE APPEARANCES:

 2

 3     FOR PLAINTIFF:

 4          RUSS AUGUST & KABAT

 5          BY:  PETER TONG, ESQUIRE

 6          4925 Greenville Avenue, Suite 200

 7          Dallas, Texas  75206

 8          310-826-7474

 9          ptong@raklaw.com

10

11

12     FOR DEFENDANTS:

13          KNOBBE MARTENS OLSON & BEAR LLP

            BY:  JEREMY ANAPOL, ESQUIRE

14          2040 Main Street, 14th Floor

            Irvine, California  92614

15          949-760-0404

            jeremy.anapol@knobbe.com

16

17

18   Also Present:

19          Billy Fahnert, Videographer/Document Tech

20

21

22
```

Page 3

1                    INDEX TO EXAMINATION

2

    WITNESS:  SUSAN CAMERON

3

4    EXAMINATION BY                        PAGE

5    MR. ANAPOL                              6

6    MR. TONG                              215

7    MR. ANAPOL                            218

8

9                   INDEX TO EXHIBITS

10                    SUSAN CAMERON

11     VirtaMove, Corp. V. Amazon.com, Inc., et al

12               Tuesday, August 27, 2024

13            Lori J. Goodin, RPR, CRR, RSA,

14               California CSR #13959

15   EXHIBIT      DESCRIPTION                    PAGE

16   Exhibit 1001  VM_AMAZON_0001097, Travel

17               Itinerary for Mr. Topitsch

18               to Texas, 1/28/16            33

19   Exhibit 1002  VM_AMAZON_0001123,

20               Registration for Greg O'Connor

21               to attend AWS re:Invent,

22               8/17/15                      57

8/27/2024          VirtaMove Corp. v. Amazon.com, Inc., et al   Susan Cameron 30(b)(6)

```
                                                Page 4
 1                INDEX TO EXHIBITS, CON'T

 2    EXHIBIT       DESCRIPTION                    PAGE

 3    Exhibit 1003  VM_AMAZON_0001195,

 4                  Registration for Greg O'Connor

 5                  to attend AWS re:Invent,

 6                  10/30/13                       61

 7    Exhibit 1004  Press Release from

 8                  VirtaMove's website, 4/28/21   121

 9    Exhibit 1005  VM_AMAZON_0001089,

10                  payoff letter, 7/25/18         172

11    Exhibit 1006  VM_AMAZON_0001309, photo

12                  of patent and trademark docs   176

13    Exhibit 1007  VM_AMAZON_0000865, Trigence

14                  Corp. Technical Submission,

15                  FY 2004                        183

16    Exhibit 1008  Plaintiff's First Supplemental

17                  Objections and Responses to

18                  Defendants' First Set of Venue

19                  Requests for Interrogatories   203

20

21

22       (Newly marked exhibits retained by reporter.)
```

Page 5

```
 1        TUESDAY, AUGUST 27, 2024, 11:02 a.m. EST

 2

 3                  PROCEEDINGS

 4            THE VIDEOGRAPHER:  We are on the

 5    record.  This is the remote 30(b)(6)

 6    deposition of VirtaMove Corporation

 7    represented by Susan Cameron, in the matter

 8    of VirtaMove Corp. versus Amazon.com, Inc.,

 9    et al., filed in the United States District

10    Court for the Western District of Texas.

11            My name is Billy Fahnert; I am the

12    video technician today.  The court reporter

13    is Lori Goodin.  We both represent Digital

14    Evidence Group.

15            Today's date is August 27, 2024.

16    The time is 11:02 a.m. Eastern Standard Time.

17            All parties have stipulated to the

18    witness being sworn in remotely.  Will

19    counsel please identify yourselves for the

20    record, and then the witness will be sworn

21    in.

22            MR. TONG:  This is Peter Tong from
```

Page 6

```
 1      Russ, August & Kabat on behalf of VirtaMove

 2      Corporation.

 3              MR. ANAPOL:  Jeremy Anapol of Knobbe

 4      Martens Olson & Bear on behalf of defendants.

 5                      *   *   *

 6  Whereupon,

 7                  SUSAN CAMERON,

 8  a witness called for examination, having been

 9  first duly sworn, was examined and testified as

10  follows:

11                      *   *   *

12                  EXAMINATION

13  BY MR. ANAPOL:

14      Q.    Good morning, Ms. Cameron.  How are

15  you today?

16      A.    Good morning.  Good.  Thank you.

17      Q.    So, my name is Jeremy, and I will be

18  taking your deposition today.

19              Have you been deposed before?

20      A.    No.

21      Q.    Okay.  So, it is just basically a

22  series of questions and answers.  They are being
```

transcribed by the court reporter and reported -- recorded by Billy, our videographer.

And so the goal here is just to collect some information from you and it is transcribed and recorded so the parties can refer to it later in court filings, if necessary, to help the court make whatever decisions need to be made in this case.

And, so, I will ask questions and I will just request that you wait until I finish my question to begin answering.

If we talk over each other, the court reporter can't transcribe us both at once or can't hear us. So, it is helpful if you just wait for the question to be completed.

If you don't understand one of my questions, feel free to ask for clarification. If you don't ask for clarification, I will assume you understand the question.

If you need to take a break at any time, just let me know. But I will just ask that if there is a question pending at that time, you

Page 8

1   answer the question before we take the break.

2               Is there any reason why you cannot

3   provide complete and accurate testimony today?

4        A.    No.

5        Q.    And could you please state your full

6   name for the record?

7        A.    Susan Cameron.

8        Q.    Any middle name, or no?

9        A.    Yes.  Hedwig.

10       Q.    Hedwig, okay.

11              And where do you live?  Just the

12   city.  I don't need your address, but just where

13   you reside.

14       A.    Sure.  Ottawa, Ontario.

15       Q.    Okay.  And is that where you are

16   today?

17       A.    Yes.

18       Q.    And are you in an office or are you

19   at home?

20       A.    I am in an office.

21       Q.    And is that VirtaMove's office?

22       A.    I am at the space that VirtaMove

Page 9

1    leases, yes.

2         Q.    Okay.  And, VirtaMove here is

3    VirtaMove, Corporation, which is a Canadian

4    corporation, right?

5         A.    Yes.

6         Q.    And there is also a VirtaMove, Inc.

7    in the United States; is that true?

8         A.    Correct.

9         Q.    And what is the relationship between

10   VirtaMove, Corp. in Canada and VirtaMove, Inc. in

11   the United States?

12        A.    VirtaMove, Corp. is the parent

13   company.  VirtaMove, Inc. in the U.S. is the

14   subsidiary.

15        Q.    And do you work for one of those

16   companies?

17        A.    Yes.

18        Q.    Which one?

19        A.    VirtaMove, Corp.

20        Q.    So, you have no employment

21   relationship with VirtaMove, Inc.?

22        A.    Correct.

Page 10

1          Q.     And how long have you worked at

2     VirtaMove, Corp.?

3          A.     12 years.

4          Q.     And just for the sake of clarity, if

5     I just say VirtaMove, I'm referring to VirtaMove,

6     Corp.

7                 If I am talking about the other

8     entity, I will refer to it as VirtaMove, Inc. or

9     VirtaMove USA.  Do you understand that?

10         A.     Yes.

11         Q.     And when we are talking about

12    VirtaMove, Corp., I just want to clarify that

13    there was some predecessor companies.

14                Do you understand that?

15         A.     Yes.

16         Q.     And can you just explain for the

17    record the names of those predecessor companies?

18         A.     Yes.  Trigence Corp., AppZero,

19    AppZero Software, and VirtaMove.

20         Q.     Okay.  And so, if we are talking

21    about VirtaMove, but in a time frame where it had

22    a different name, we might be referring to

Page 11

1     Trigence or AppZero, or AppZero Software.  Do you

2     understand that?

3          A.    Yes.

4          Q.    And so when you say you have worked

5     at VirtaMove for 12 years, you first started

6     working at the company when it was operating

7     under a different name, correct?

8          A.    Correct.

9          Q.    And what was it called when you

10    started working at VirtaMove?

11         A.    AppZero Software.

12         Q.    Okay.  Do you have an understanding

13    of why it went from being AppZero to AppZero

14    Software?

15         A.    Yes.

16         Q.    Can you explain that?

17         A.    My understanding is that the assets

18    of the company were sold and a new company was

19    rolled out.  The new company being called AppZero

20    Software.

21         Q.    Okay.  And what are your

22    responsibilities at VirtaMove?

Page 12

```
 1        A.    I am responsible for day-to-day

 2   accounting, human resources activities, various

 3   administration activities.

 4              I support the Board of Directors.

 5   Document storage and organization, and various

 6   other administrative functions.

 7        Q.    What kind of support do you provide

 8   for the Board of Directors?

 9        A.    I organize board meetings.  I assist

10   with creating regular board meeting

11   presentations.

12        Q.    Any other support you provide for

13   the Board of Directors?

14        A.    Perhaps in the past, travel

15   organization.

16        Q.    And what is your title at VirtaMove?

17        A.    Office Manager.

18        Q.    And has that been your title at --

19   during the entire duration of your employment

20   with VirtaMove?

21        A.    Largely, yes.

22        Q.    Have you held any other titles?
```

Page 13

```
 1          A.     I do have a different title on my

 2    e-mail which is Customer Engagement and Business

 3    Operations Manager.

 4          Q.     And what do you do in your role as

 5    Customer Engagement and Business Operations

 6    Manager?

 7          A.     I organize meetings with sales

 8    prospects.  I follow up, following sales

 9    meetings, reaching out to customers.  That type

10    of activity.

11          Q.     And has your role at VirtaMove been

12    the same throughout your time there?

13          A.     No.

14          Q.     How has your role at VirtaMove

15    changed over time?

16          A.     I think the support that I provide

17    to Nigel Stokes and also to the Board is a little

18    bit more involved than it was in the past.

19          Q.     How so?

20          A.     Oh, to the extent that, as far as

21    the Board is concerned, when I joined I wasn't

22    expected to organize the presentations.
```

8/27/2024          VirtaMove Corp. v. Amazon.com, Inc., et al   Susan Cameron 30(b)(6)

Page 25

1   and search your records again to check that you

2   didn't overlook any other California employees?

3          A.    I would be willing to do that.  I am

4   also confident, I believe those are the only

5   employees.  But, yes.

6          Q.    Okay.  And Samantha Clark was in San

7   Francisco; is that correct?

8          A.    Yes.

9          Q.    And let me just clarify that

10  question.

11                When she worked for VirtaMove, she

12  was in San Francisco, correct?

13         A.    Yes.

14         Q.    And as far as you know, is she still

15  in San Francisco?

16         A.    As far as I know.

17         Q.    And during the time that you have

18  been at VirtaMove, have VirtaMove's employees

19  visited customers in California?

20         A.    Yes.

21         Q.    Do you know how often that happened?

22         A.    I can estimate.

Page 26

1          Q.     Okay.  What is your best estimate?

2          A.     30 visits.

3          Q.     And during the time you have been at

4    VirtaMove, have VirtaMove employees traveled to

5    California for conferences?

6          A.     Yes.

7          Q.     Can you give me your best estimate

8    of how often that happened?

9          A.     Well, that is what I meant by 30

10   visits.

11         Q.     I see.  Other than for conferences,

12   have VirtaMove employees traveled to California

13   to visit customers?

14         A.     Yes.

15         Q.     Do you have an estimate of how often

16   that happened?

17         A.     If I had to guess eight, maybe, or

18   ten.

19         Q.     Okay.  And during the time you have

20   been at VirtaMove, have VirtaMove employees

21   traveled to Texas for conferences?

22         A.     For corporate events, yes.

Page 27

1          Q.    Are you making a distinction between

2     corporate events and conferences?

3          A.    No, not really, I guess.

4          Q.    What do you mean by corporate

5     events?

6          A.    So, a company-sponsored event as

7     opposed to an industry event, I suppose.

8          Q.    Okay.  During the time you have been

9     at VirtaMove, have VirtaMove employees traveled

10    to Texas for industry conferences?

11         A.    I don't think so.

12         Q.    And, your estimate earlier of about

13    30 trips to California, was that for industry

14    conferences?

15         A.    I think it would be a combination of

16    industry conferences and corporate.  But mostly

17    industry, yes.

18         Q.    And, what is your best estimate of

19    how many times VirtaMove employees have traveled

20    to Texas for corporate events?

21         A.    It would be once or twice.

22         Q.    And where in Texas were those

Page 28

1    corporate events?

2          A.    I don't know.

3          Q.    And those travels to California,

4    including about 30 conferences and corporate

5    events, have those taken place in northern

6    California?

7          A.    Can I clarify something?

8          Q.    Sure.

9          A.    The 30 events would include customer

10   visits and corporate and industry events.

11         Q.    Thank you for the clarification.

12         A.    Can you repeat your last question?

13         Q.    For those 30 visits to California,

14   do you have an estimate of how many have been to

15   northern California?

16         A.    If I had to guess, I would say 20.

17               MR. TONG:  Objection, calls for

18      speculation.

19               THE WITNESS:  In my opinion, I would

20      guess 20.

21   BY MR. ANAPOL:

22         Q.    Okay.  And that guess is based on

Page 29

1    your 12 years of experience at VirtaMove,

2    correct?

3         A.    Yes.

4         Q.    And part of your role at VirtaMove

5    is or has been to schedule travel, correct?

6         A.    Yes.

7         Q.   So, VirtaMove's counsel produced

8    some documents to Amazon in this case which

9    appear to have come from you.

10              So, my question is, did you provide

11   a set of documents to VirtaMove's counsel in this

12   case?

13              MR. TONG:  Objection, privilege.

14       Don't answer that.

15              THE WITNESS:  I believe that is

16       privileged so I won't be able to answer.

17              MR. ANAPOL:  Pete, are you telling

18       me that she didn't provide any non-privileged

19       documents to you?

20              MR. TONG:  I'm telling you that what

21       she provided to me is privileged.  That is

22       classical attorney/client communications.

Page 59

1    about travel to California?

2                 MR. TONG:  Same objection.

3                 THE WITNESS:  Can you rephrase the

4      question again?

5    BY MR. ANAPOL:

6         Q.    I would like you to answer the

7    question that I asked.

8                 Do you see anything in this document

9    about travel to California?

10                MR. TONG:  Same objection.

11                THE WITNESS:  Not California.  No.

12   BY MR. ANAPOL:

13        Q.    Do you see anything in this document

14   about travel to some other location?

15        A.    No.

16        Q.    What is this document?

17        A.    This document is confirmation of a

18   registration for Greg O'Connor to attend

19   AWS re:Invent, a industry trade show.

20        Q.    Do you know where that industry

21   trade show took place?

22        A.    I believe it took place in

Page 60

1    California.

2         Q.    Are you sure that it took place in

3    California?

4         A.    Yes.

5         Q.    Okay.  So, you think this document

6    is evidence of travel to California?

7         A.    Yes.

8         Q.    Okay.  Where in California do you

9    think this conference took place?

10        A.    I think San Francisco.

11        Q.    And you believe that Greg O'Connor,

12   who was the CEO of VirtaMove at the time,

13   traveled to San Francisco for this conference?

14        A.    Yes.

15        Q.    And if Greg O'Connor had traveled to

16   San Francisco for this conference, would you have

17   booked his travel?

18        A.    Yes, probably.

19        Q.    And do you have in your e-mails any

20   confirmation e-mails showing flights that Greg

21   O'Connor took to San Francisco?

22        A.    Yes, probably.

Page 61

 1          Q.    And did you provide those

 2     confirmation e-mails to your counsel?

 3          A.    No, I don't think so.

 4          Q.    Why not?

 5          A.    Well, this document here confirms

 6     that Greg did attend or was registered to attend

 7     AWS re:Invent in California.

 8          Q.    But you agree with me that this

 9     document says nothing about California, correct?

10               MR. TONG:  Objection.  Foundation.

11               THE WITNESS:  Correct.

12               MR. ANAPOL:  Billy can we pull up

13        Document J?  And let's mark this as

14        Exhibit 1003.

15                    (Exhibit 1003 marked for

16                     identification.)

17               MR. ANAPOL:  And, Billy, just let me

18        know when that is done.

19               THE VIDEOGRAPHER:  Yes, it is in the

20        Box.

21               MR. ANAPOL:  Great.

22     BY MR. ANAPOL:

8/27/2024          VirtaMove Corp. v. Amazon.com, Inc., et al   Susan Cameron 30(b)(6)

Page 62

1          Q.    Ms. Cameron, do you see

2    Exhibit 1003?

3          A.    Not yet.

4                MR. ANAPOL:  You may need to refresh

5       your browser.

6                THE WITNESS:  I did.

7                THE VIDEOGRAPHER:  Yes, I see that

8       it is in there.

9                THE WITNESS:  Okay.  1003?

10   BY MR. ANAPOL:

11         Q.    Yes.  Do you have Exhibit 1003?

12         A.    I see the file details, and I have

13   clicked on that.  But, I'm not seeing the actual

14   file.  I'm not sure how to -- hang on.  Let me

15   try again.

16                Thank you.  Yes, I have it now.

17         Q.    Great.  What is Exhibit 1003?

18         A.    It is a registration event for an

19   AWS re:Invent conference attendance.

20         Q.    And this is for a different year

21   than the document that we just looked at,

22   Exhibit 1002, correct?

Page 63

```
 1          A.    Yes, that's correct.

 2          Q.    So, this document, Exhibit 1003, is

 3   for AWS re:Invent 2013, correct?

 4          A.    It is.

 5          Q.    And does this document say anything

 6   about California?

 7                MR. TONG:  Objection, vague.

 8                THE WITNESS:  No.

 9   BY MR. ANAPOL:

10          Q.    Do you think this conference took

11   place in California?

12          A.    I think it did.

13          Q.    Where in California do you think

14   this conference took place?

15          A.    Likely San Francisco.

16          Q.    And do you think Mr. O'Connor

17   traveled to San Francisco for AWS re:Invent in

18   2013?

19          A.    Yes.

20          Q.    And Mr. O'Connor was the CEO of

21   VirtaMove at that time?

22          A.    Yes.
```

Page 175

1    to?

2          A.    If memory serves me correctly -- it

3    is going back a little ways, though.

4                I think it was a $200,000 line of

5    credit or loan, using their terminology.  I think

6    that was the amount, but I'm not 100 percent

7    certain.

8          Q.    And do you know if anybody estimated

9    the value of VirtaMove's patents in connection

10   with the loan?

11               MR. TONG:  Objection.  Scope.

12               THE WITNESS:  No, I'm not aware of

13       anything like that.

14   BY MR. ANAPOL:

15         Q.    Are you aware of anybody at

16   VirtaMove ever having traveled to Midland, Texas?

17         A.    I couldn't say.  I don't know.

18   There was a lot of travel at one time.

19         Q.    Well, in your years of arranging

20   travel for VirtaMove employees, have you ever

21   arranged travel to Midland, Texas?

22         A.    I can't remember specifically

Page 176

1    arranging travel to Midland, Texas.

2              Whether somebody went there or not,

3    I don't know that.

4         Q.    But in preparing to testify about

5    VirtaMove's contacts with Texas, you didn't come

6    across any information about VirtaMove employees

7    travelling to Midland, Texas, correct?

8         A.    Not specifically to Midland, Texas.

9         Q.    Do you know where Midland, Texas is?

10        A.    No.

11             MR. ANAPOL:  Billy, can we put up

12      Document F and mark it as Exhibit 1006?

13                  (Exhibit 1006 marked for

14                   identification.)

15   BY MR. ANAPOL:

16        Q.    Ms. Cameron, do you have

17   Exhibit 1006 on your screen?

18        A.    Yes.

19        Q.    Okay.  And I apologize that the

20   Bates Number is unreadable.

21             But just for the record, this is

22   Bates Number VM_Amazon_0001309.

Page 177

1                    MR. ANAPOL:  Billy might be able to

2          zoom in.  It is on the very far bottom right.

3                    THE WITNESS:  Okay.  Thank you.

4     BY MR. ANAPOL:

5          Q.    Do you see that Bates Number there?

6          A.    Yes.

7          Q.    Do you know what this Exhibit 1006

8     shows?

9          A.    Yes.

10         Q.    Did you take the photograph in

11    Exhibit 1006?

12         A.    Yes.

13         Q.    What is shown in this photograph,

14    Exhibit 1006?

15         A.    Well these are two boxes of patents

16    and trademarks documents.

17         Q.    And why did you take this picture?

18                   MR. TONG:  Objection.  Privilege.

19         Instruct the witness not to answer.

20                   THE WITNESS:  I won't answer that

21         question.

22    BY MR. ANAPOL:

Page 178

```
 1        Q.    You took this picture at the

 2   direction of counsel?

 3              MR. TONG:  Objection, privilege.

 4        You can answer yes or no.

 5              THE WITNESS:  Yes.

 6   BY MR. ANAPOL:

 7        Q.    And, what does this picture tell

 8   you?

 9              MR. TONG:  Objection.  Vague.

10              THE WITNESS:  What do you mean

11      specifically?

12   BY MR. ANAPOL:

13        Q.    I just don't know why you sent this

14   picture to us; so I'm trying to figure out what

15   the point of it is.

16              Do you know what the point of this

17   picture is?

18        A.    To demonstrate, I believe, the

19   volume of files associated with these patents,

20   and that they are physical.

21        Q.    Okay.  So, you have some physical

22   files associated with some patents.  Correct?
```

Page 179

 1          A.    There are a number of files that are

 2    associated with patents, yes.

 3          Q.    Okay.  And what is shown in this

 4    picture is two cardboard boxes, what we call

 5    banker boxes, right?

 6          A.    Yes.

 7          Q.    So, it is two banker boxes that are

 8    not quite full.  Correct?

 9          A.    It is --

10                MR. TONG:  Objection, foundation.

11                THE WITNESS:  Sorry, Peter?

12                MR. TONG:  Objection, foundation.

13       You can go ahead and answer the question.

14                THE WITNESS:  Uh-huh.  Jeremy, it is

15       difficult to tell from this picture.

16                Certainly the box on the left is

17       extremely full and very, very heavy.  The box

18       on the right is slightly less full.  But

19       again it is difficult to tell because the

20       files are slipping backwards.

21    BY MR. ANAPOL:

22          Q.    Okay.  And these boxes include

Page 180

1    information about patents and information about

2    trademarks, correct?

3          A.    Yes.

4          Q.    And you understand that VirtaMove is

5    not asserting any trademarks in this case,

6    correct?

7          A.    Understood.

8          Q.    So, some of the files in these boxes

9    are not related to this case, correct?

10         A.    Correct.

11         Q.    Okay.  And these files also address

12   patents that are not at issue in this case,

13   correct?

14         A.    Yes.

15         Q.    What is that spiral notebook in the

16   back of the right-hand box?

17         A.    I don't know.

18         Q.    You don't know?

19         A.    No.

20         Q.    Does this box have any information

21   that wasn't submitted to the Patent Office?

22         A.    Yes.

Page 181

1         Q.     What information is in these boxes

2    that was not submitted to the Patent Office?

3         A.     Let me be clear --

4              MR. TONG:   Objection -- hold on.

5              Objection, caution the witness not

6         to reveal the nature of any attorney/client

7         privileged information that may be in the

8         boxes.

9              THE WITNESS:   I will be clear.   I

10        have not reviewed all of the documents in

11        these boxes.   There are a lot of documents.

12        There is certainly legal correspondence

13        included in those boxes.

14   BY MR. ANAPOL:

15        Q.     What do you mean by legal

16   correspondence?

17        A.     So, based on the time, if we

18   considered 2003, 2004, many people printed out

19   their e-mails.

20              There are a lot of e-mail printouts

21   in those boxes.   And included in those e-mail

22   printouts are communications with counsel.

Page 182

1          Q.     So, privileged communications are

2     included among the papers in these boxes in

3     Exhibit 1006, correct?

4          A.     Yes, correct.

5          Q.     And, of course, you are not going to

6     tell me what the contents of those privileged

7     documents, correct?

8          A.     Correct.

9          Q.     And you are not going to go use

10    those privileged documents to prove anything at

11    trial.  Correct?

12         A.     I'm not a lawyer.  I don't think

13    that is a call that I can make.  I don't know.

14              MR. ANAPOL:  Are you planning to

15         waive the privilege over these documents?

16              MR. TONG:  My client is not waiving

17         privilege.

18    BY MR. ANAPOL:

19         Q.     Okay.  So, can you tell me what

20    portion of the documents in these two boxes

21    relate specifically to the two patents in this

22    case and is not privileged?

8/27/2024          VirtaMove Corp. v. Amazon.com, Inc., et al   Susan Cameron 30(b)(6)

Page 183

1          A.     Oh, I don't think I can tell you

2     that.

3               MR. ANAPOL:  Okay.  Billy, can we do

4     Document E and mark it as Exhibit 1007,

5     please.

6                    (Exhibit 1007 marked for

7                     identification.)

8     BY MR. ANAPOL:

9          Q.    Ms. Cameron, do you recognize

10    Exhibit 1007?

11         A.    Just getting to it.  Sorry.  No, I

12    guess not.

13         Q.    So, you don't recall providing this

14    document, Exhibit 1007, to VirtaMove's counsel?

15         A.    I may have.  I don't remember if I

16    included this specifically.

17               Again, I provided quite a number of

18    documents.  I don't remember each and every one

19    of them.

20         Q.    Okay.  Did you look at VirtaMove's

21    files to see if VirtaMove has any notebooks that

22    belonged to the inventors of the patents in suit?

8/27/2024          VirtaMove Corp. v. Amazon.com, Inc., et al   Susan Cameron 30(b)(6)

Page 220

1               CERTIFICATE OF NOTARY

2               I, LORI J. GOODIN, RPR, CRR,

    CA CSR # 13959 the Notary for this deposition, do

3   hereby certify that the witness whose testimony

    appears in the foregoing deposition was sworn by

4   me; that I am neither counsel for, related to,

    nor employed by any of the parties to the action

5   in which this deposition was taken; and, further, that I am

    not a relative or employee of any attorney or

6   counsel employed by the parties hereto, or

    financially or otherwise interested in the

7   outcome of this action.

8

9

10

11   _____

12   LORI J. GOODIN, RPR, CLR, CRR
     Notary Public in and for:

13   STATE OF FLORIDA, COUNTY OF SARASOTA

     Notary Commission Number:  GG987804

14   My Commission expires:  May 12, 2028

     STATE OF CALIFORNIA, CA CSR# 13959

15   My Commission expires:  February 22, 2025

     STATE OF MARYLAND, COUNTY OF ANNE ARUNDEL

16   My Commission expires:  August 2, 2025

17   DISTRICT OF COLUMBIA, WASHINGTON DC

18   My Commission expires:  June 1, 2026

19   STATE OF DELAWARE:  COUNTY OF KENT

20   My Commission expires:  September 9, 2025

21   STATE OF PENNSYLVANIA, COUNTY OF LEHIGH

22   My Commission expires:  April 5, 2025