# EXHIBIT 6

Case 7:24-cv-00030-ADA-DTG   Document 73-6   Filed 10/25/24   Page 2 of 26

10/7/2024          VirtaMove Corp. v. Amazon.com, Inc., et al.          Paul O'Leary

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

MIDLAND/ODESSA DIVISION

_____

VIRTAMOVE, CORP.,                    )

               Plaintiff, )

                        ) Case No.

       v              ) 7:24-CV-00030-DC-DTG

                        )

AMAZON.COM, INC.; AMAZON.COM  )

SERVICES LLC; AND AMAZON WEB  )

SERVICES, INC.,                    )

                        )

            Defendants.)

_____)


VIDEOTAPED DEPOSITION OF PAUL O'LEARY

APPEARING REMOTELY

October 7, 2024

5:28 p.m.


Reported by: Eileen Mulvenna, CSR/RMR/CRR/RDR


_____

DIGITAL EVIDENCE GROUP

1730 M Street, NW, Suite 812

Washington, D.C. 20036

(202) 232-0646

Page 2

1              REMOTE VIDEOTAPED DEPOSITION of

2     PAUL O'LEARY, a witness on behalf of Plaintiff in

3     the above-titled action, held on Tuesday, October 7,

4     2024, commencing at approximately 5:28 p.m., before

5     Eileen Mulvenna, CSR/RMR/CRR/RDR, Certified

6     Shorthand Reporter, Registered Merit Reporter,

7     Certified Realtime Reporter, Registered Diplomate

8     Reporter, and Notary Public of the State of New

9     York.

10

11

12

13

14

15

16

17

18

19

20

21

22

Page 3

1   A P P E A R A N C E S:

2

3   QI (PETER) TONG, ESQUIRE

4   Attorneys for the Plaintiff and the Witness

5   RUSS AUGUST & KABAT

6   4925 Greenville Avenue, Suite 200

7   Dallas, Texas  75206

8   ptong@raklaw.com

9

10

11   JEREMY ANAPOL, ESQUIRE

12   Attorneys for Defendants

13   Knobbe Martens Bear & Owens

14   2040 Main Street, 14th Floor

15   Irvine, California 92614

16   jeremy.anapol@knobbe.com

17

18

19   ALSO PRESENT:

20   Bill Fahnert, Videographer

21

22

Page 4

1                          I N D E X

2  WITNESS          EXAMINATION BY          PAGE

3

4  PAUL O'LEARY

5                      MR. MR. ANAPOL          6

6

7                     E X H I B I T S

8                                          PAGE

9

10  Exhibit 1013  Bates Nos.                19

11                VM_AMAZON_0001431 through

12                VM_AMAZON_0001437,

13                Declaration of Paul O'Leary

14

15

16

17

18

19

20

21

22

Page 5

1          THE VIDEOGRAPHER:  We are on the

2     record.

3          This is the remote video deposition of

4     Paul O'Leary in the matter of Verta

5     Corporation versus Amazon.Com, Incorporated,

6     et al., filed in the United States District

7     Court for the Western District of Texas,

8     Midland/Odessa Division.

9          My name is Billy Fahnert.  I am the

10     video technician today.  The court reporter

11     is Eileen Mulvenna.  We both represent

12     Digital Evidence Group.

13          Today's date is October 7, 2024.  The

14     time is 5:28 p.m., Eastern Daylight Time.

15          All parties have stipulated to the

16     witness being sworn in remotely.

17          Will counsel please identify

18     yourselves for the record and then the

19     witness will be sworn in.

20          MR. ANAPOL:  Jeremy Anapol, Knobbe

21     Martens on behalf of defendants.

22          MR. TONG:  Peter Tong from Russ August

Page 6

1           Kabat on behalf of VirtaMove Corporation and

2           also representing the witness.

3     PAUL O'LEARY,

4         having been duly sworn by Eileen Mulvenna,

5         a Notary Public of the State of New York,

6         was examined and testified as follows:

7     EXAMINATION

8     BY MR. ANAPOL:

9           Q.      Good evening, Mr. O'Leary.

10          A.      Good evening.

11          Q.      You understand that you're under oath

12    just as if you were in a courtroom and so you're

13    obligated by law to tell the truth in all of your

14    answers; correct?

15          A.      Yes, I do.

16          Q.      Please state your full name for the

17    record.

18          A.      My full name is Paul Robert O'Leary.

19          Q.      And you are not a VirtaMove employee;

20    correct?

21          A.      That is correct, I'm not a VirtaMove

22    employee.

Page 12

```
 1          A.      No --

 2                  MR. TONG:  Hold on.

 3                  Objection.  I'm going to object into

 4          privilege for what we put into the

 5          declaration.

 6    BY MR. ANAPOL:

 7          Q.      What did you mean by "what was put

 8    into the declaration," Mr. O'Leary?

 9          A.      I meant the information in the

10    declaration, that was in the draft that I read and

11    that was in the final that I copied together with

12    information that I provided.

13          Q.      Who did you get that draft from?

14          A.      Russ August Kabat.

15          Q.      Who at Russ August?

16          A.      Peter.

17          Q.      So how much time have you charged to

18    Russ August so far in this case?

19          A.      Probably on the record of 40 hours.

20          Q.      Do you recall testifying in your

21    declaration that you expect to be at trial for more

22    than a week in this case?
```

Page 13

1              MR. TONG:  Objection, foundation.

2     BY MR. ANAPOL:

3          Q.    Go ahead, Mr. O'Leary.

4          A.    Yes, I put that -- whatever time would

5     be required.

6          Q.    Have you ever been to Northern

7     California?

8          A.    Yes, I have.

9          Q.    How many times?

10         A.    Quite a few times early in my career.

11         Q.    Do you have an estimate of how many

12    times?

13         A.    Probably somewhere between 10 and 15

14    times.

15         Q.    And did you go for business or

16    personal reasons?

17         A.    Always business.

18         Q.    And what company was that with?

19         A.    Originally it was Nortel Networks and

20    also with my previous employer, Innovapost.

21         Q.    Did you go at all when you worked for

22    Trigence?

Page 14

```
 1        A.      We did not go to California when I

 2   worked for Trigence.

 3        Q.      So why were you willing to go to

 4   Northern California 10 to 15 times before but you're

 5   not willing to go now?

 6        A.      Because that's where the Northern

 7   Telcom offices were.

 8        Q.      Okay, but why would you not go now?

 9        A.      Because of the venue.  And I've also

10   been to -- for the same reasons I've been in

11   Northern Telcom offices in Dallas and that is a

12   lot -- that is a lot less -- that's a lot less

13   inconvenient for me to get there due to the

14   distance.

15        Q.      Have you ever been to Midland, Texas?

16        A.      I've not been to Midland.  I've been

17   to Dallas.

18        Q.      Do you know how far Midland is from

19   Dallas?

20        A.      Maybe a hundred miles or something.  I

21   don't know.  I'd have to look it up.

22        Q.      So you have no personal experience
```

Page 15

1   with the inconvenience of getting to Midland, Texas;

2   correct?

3                MR. TONG:  Objection, form.

4   BY MR. ANAPOL:

5        Q.     Go ahead, Mr. O'Leary.

6        A.     So I have not -- I have no -- I've not

7   been to Midland, Texas; however, I've been to Dallas

8   many times.

9        Q.     And you've also been to Northern

10  California many times?

11       A.     Yes.

12       Q.     So you have no personal experience

13  with the convenience of traveling to Midland, Texas;

14  correct?

15                MR. TONG:  Objection, asked and

16       answered, form.

17  BY MR. ANAPOL:

18       Q.     Go ahead, Mr. O'Leary.

19       A.     So I answered previously that I have

20  been to Dallas many times.  So I'm aware of getting

21  to Dallas.  Midland is not that far from Dallas.

22       Q.     It's not?  How far is Midland from

Page 16

1    Dallas?

2          A.      Maybe a hundred miles or so.

3          Q.      Are you sure about that?

4          A.      I haven't looked it up and I'm not

5    certain.

6          Q.      So what's your basis for saying it's a

7    hundred miles?

8          A.      That's what I think when I looked on

9    the map.

10         Q.      Okay.  Could you be off by a factor of

11   two?

12         A.      Possible, yes.  I don't know.

13         Q.      Could you be off by a factor of three?

14         A.      Possible, yes.  I don't know.

15         Q.      So you really have no idea how far

16   Midland is from Dallas; correct?

17                 MR. TONG:  Objection; argumentative.

18   BY MR. ANAPOL:

19         Q.      Correct?

20         A.      I've indicated what I believe from

21   what I know.  I can look it up.

22         Q.      Could you be off by more than a factor

Case 7:24-cv-00030-ADA-DTG   Document 73-6   Filed 10/25/24   Page 13 of 26

10/7/2024            VirtaMove Corp. v. Amazon.com, Inc., et al.            Paul O'Leary

Page 17

 1   of three?

 2         A.      I don't know.

 3         Q.      So you really just don't know how far

 4   Midland is from Dallas; correct?

 5         A.      I assume it's about a hundred miles or

 6   so.  I'd have to look it up.  I've seen it on the

 7   map, but I'd have to look it up in terms of travel.

 8         Q.      Do you know how many hours it takes to

 9   drive from Dallas to Midland?

10         A.      No, I do not.

11         Q.      Do you think that there are direct

12   flights from your location in Canada to Midland,

13   Texas?

14         A.      I would be surprised if there were.

15         Q.      So how would you actually get to

16   Midland if you had to go?

17               MR. TONG:  Objection, form.

18   BY MR. ANAPOL:

19         Q.      So, Mr. O'Leary, just to be clear,

20   your counsel is going to make certain objections for

21   the record.  Unless he instructs you not to answer,

22   you still have to answer the question.

Page 18

```
 1        A.      So I would fly to Dallas and either

 2    drive or fly to Midland.

 3        Q.      And you're not sure how many miles or

 4    hours you would drive or fly once you got to Dallas;

 5    correct?

 6        A.      Once I got to Dallas, no.  I haven't

 7    looked that up.

 8        Q.      Why didn't you put that in your

 9    declaration?

10        A.      Because --

11                MR. TONG:  Hold on.

12                Objection, calls for a legal

13        conclusion.

14    BY MR. ANAPOL:

15        Q.      Go ahead.

16        A.      Why -- could you repeat the question?

17        Q.      Why didn't you put in your declaration

18    how long you expect to take to travel from Dallas to

19    Midland?

20        A.      Because the declaration only covered

21    the direct distance, not flying times, as a measure

22    of one being more inconvenient than the other.
```

Page 24

1  you're unwilling to go to Northern California for

2  this case?

3          A.    So Midland, Texas is far more easier

4  for me to get to.  It's less inconvenient.  It will

5  take less time to get there.

6          Q.    My question --

7          A.    California for me -- I'm on the

8  eastern side of the country, almost on the East

9  Coast.  California for me means going across the

10  whole continent and it takes an awful lot more time,

11  as you said, when you factor in the flights and the

12  connectings and all of that.  So Midland, Texas is

13  far more -- is far, if you will, less inconvenient

14  for me --

15          Q.    Well --

16          A.    -- due to the differences in the

17  distances.

18          Q.    But you testified earlier that you

19  don't know how long it would take to get from Dallas

20  to Midland; correct?

21          A.    Sure, but --

22                MR. TONG:  Objection,

Page 25

1          mischaracterizes.

2     BY MR. ANAPOL:

3          Q.     But what, Mr. O'Leary?

4          A.     I said sure, but it's pretty close.

5     It's not going to take long.

6          Q.     It's five hours away, Mr. O'Leary.

7     Did you know that?

8                 MR. TONG:  Objection, foundation.

9                 (Cross talk.)

10    BY MR. ANAPOL:

11         Q.     Did you know that driving from Midland

12    to Dallas takes five hours?

13                MR. TONG:  Objection, foundation.

14    BY MR. ANAPOL:

15         Q.     Did you know that, yes or no?

16         A.     No, I did not know that.

17         Q.     When you wrote this declaration,

18    nobody told you that Midland is five hours from

19    Dallas; correct?

20         A.     No, I wasn't -- it's not in the

21    declaration.

22         Q.     When did you decide that you were

Page 26

1    unwilling to travel to Northern California for this

2    case?

3         A.      At the point -- at the point where I

4    signed the declaration.

5         Q.      So before you received the draft

6    declaration from Russ August, you had not yet

7    decided that you were unwilling to travel to

8    Northern California?

9         A.      No, I had not signed anything at that

10   point.  That's all I'm saying.

11        Q.      So was there a point before when you

12   signed the declaration that you decided you were

13   unwilling to go to Northern California?

14            MR. TONG:  Objection, form.

15            THE WITNESS:  So the declaration says

16        that I am -- I find that it would be less

17        inconvenient, less costly and quicker for me

18        to get to Midland, Texas.  That's all it

19        says.

20   BY MR. ANAPOL:

21        Q.      So would you be willing to go to

22   Northern California if Russ August asked you to go?

10/7/2024          VirtaMove Corp. v. Amazon.com, Inc., et al.          Paul O'Leary

Page 27

```
 1                    MR. TONG:  Objection, form.

 2                    THE WITNESS:  The form that's been

 3          submitted, I believe, testifies to the

 4          position on it that I signed for; right?

 5     BY MR. ANAPOL:

 6          Q.     That did not answer my question.  My

 7     question is, if Russ August asked you to go to

 8     Northern California, would you go?

 9          A.     That's a hypothetical --

10                    MR. TONG:  Object to form.

11                    THE WITNESS:  -- situation.

12                    Sorry.

13     BY MR. ANAPOL:

14          Q.     So are you willing to promise right

15     now that you would not go to Northern California if

16     Russ August asked you to go?

17                    MR. TONG:  Objection, form.

18                    THE WITNESS:  I'm saying I don't want

19          to speculate on questions I haven't been

20          asked yet, or situations.  I'm saying what

21          we're here to talk about is the declaration

22          in front of us and which I've indicated by
```

Case 7:24-cv-00030-ADA-DTG   Document 73-6   Filed 10/25/24   Page 19 of 26

10/7/2024          VirtaMove Corp. v. Amazon.com, Inc., et al.          Paul O'Leary

Page 28

1          signature that Midland, Texas is far more

2          convenient -- or far less inconvenient for me

3          than going to Northern California.  That's

4          all I believe we're talking about today.

5     BY MR. ANAPOL:

6          Q.     I'm asking you, are you willing to go

7     to Northern California if the trial for this case is

8     in Northern California and Russ August asks you to

9     go?

10              MR. TONG:  Objection, form, asked and

11          answered.

12              THE WITNESS:  I'll come back to my

13          previous answer.  That's not what I believe

14          we're here -- we're here to go through the --

15     BY MR. ANAPOL:

16          Q.     Mr. O'Leary, I don't --

17          A.     -- declaration.

18          Q.     I don't need your --

19              MR. TONG:  Jeremy --

20          Q.     -- legal understanding -- I don't need

21     your legal understanding of what we're here to

22     discuss.  If Mr. Tong believes I'm going outside the

Case 7:24-cv-00030-ADA-DTG   Document 73-6   Filed 10/25/24   Page 20 of 26

10/7/2024          VirtaMove Corp. v. Amazon.com, Inc., et al.          Paul O'Leary

Page 29

1    scope of what we're permitted to discuss, he can

2    call Judge Gilliam who will stop me; but I'm

3    entitled to cross-examine you on your declaration

4    which means to probe how seriously the court should

5    take what you're saying here.  Okay?  So listen

6    carefully to my question and I would like an answer

7    to this question.

8                    If the trial for this case is in

9    Northern California and Russ August asks you to go

10   to trial, would you go?

11                   MR. TONG:  Objection to form, asked

12         and answered.  And also, the witness was cut

13         off by Mr. Anapol interrupting the answer.

14   BY MR. ANAPOL:

15         Q.    Go ahead, Mr. O'Leary.

16         A.    I would have to take it under

17   consideration, and I can't answer that question for

18   you right now because the question hasn't been

19   asked.

20         Q.    So you would consider going to

21   Northern California, but you're not willing --

22         A.    No --

Page 30

1      Q.      -- to commit right now?

2      A.      -- I would say -- I said I would have

3   to consider -- I would say I would have to take the

4   question being asked under consideration.  I making

5   no statement right now about how I potentially would

6   or wouldn't answer that question.

7      Q.      So you're not willing to take a

8   position right now on whether you would or would not

9   be willing to go to Northern California if Russ

10  August asks you to do it for this case?

11     A.      Yes.  I would have to -- I would make

12  that decision at the time should those circumstances

13  happen, but I'm not willing to make a decision right

14  now.

15     Q.      And is there anything Russ August

16  would have to do to convince you to go to Northern

17  California?

18          MR. TONG:  Objection, form.

19          THE WITNESS:  I believe -- I think I

20      already answered that I wouldn't -- I would

21      have to consider the question at the time it

22      was asked if it was asked.  But right now, I

Page 31

1          can't tell you how I would answer the

2          question.  I would have to give it

3          consideration at the time.

4    BY MR. ANAPOL:

5          Q.    And -- but you're willing to say right

6    now that you would go to Midland?

7          A.    Yes, I'm willing to say that right

8    now.  That's what it says in the -- that is more --

9    that is less inconvenient for me.

10         Q.    Because of what?

11         A.    Because of the distance that I have to

12   travel.

13         Q.    But we established earlier that you

14   cannot fly directly from your home in Canada to

15   Midland; correct?

16         A.    Yes.  You established that correctly,

17   yes.  However --

18         Q.    You don't know how long it would take

19   to actually get to Midland from your home; correct?

20              MR. TONG:  Objection,

21         mischaracterizes.  And also, the question

22         interrupted the answer.

Page 32

1    BY MR. ANAPOL:

2          Q.     Go ahead, Mr. O'Leary.

3          A.     What I do know is going across the

4    continent to California takes a day for me to get

5    there and a day for me to get back.  I do know many

6    occasions I've gone to Dallas, worked through the

7    week, come back on a Friday night and gone back on a

8    Sunday night so that I can spend the weekend at

9    home.  Right now family situations are also a

10   consideration in terms of the travel.

11         Q.     Okay.  So are you able to say that

12   getting from your home to Midland would take less

13   than a day?

14         A.     From my home to Midland, yes.

15         Q.     How do you know that?

16         A.     Because whether I drive or whether I

17   fly from Midland into Dallas, I can arrange to get

18   there and get an evening flight out of Dallas and

19   get back here and then go back on a Sunday if it's a

20   weekend situation.  Flying across the continent is a

21   whole day to get there and a whole day to get back.

22   It is not that case if I have to go to Texas.

Page 33

1          Q.     How do you know it doesn't take a

2     whole day to get to Midland?

3          A.     I've been to Dallas.  So if I take --

4          Q.     But -- I'm sorry, go ahead.

5          A.     I've been to Dallas many times.

6          Q.     I get that Dallas is convenient.  This

7     case was not filed in Dallas.  My question is about

8     Midland.  How do you know that you could quickly get

9     to Midland?

10          A.     How do I know that I can quickly get

11     to Midland?  I'm going by the distance; right?

12          Q.     But the only way that you can get from

13     Midland to Dallas that we've discussed is by car;

14     correct?

15               MR. TONG:  Objection --

16               (Cross talk.)

17               THE WITNESS:  I don't know.

18               MR. TONG:  -- lacks foundation.

19               THE WITNESS:  Before I agree with

20          that, I'd have to go look it up.

21     BY MR. ANAPOL:

22          Q.     So you don't know how you would

Page 34

1    actually get from --

2                    MR. TONG:  Hold on.  Before you ask

3           your question, you're speaking really fast.

4           The court reporter I don't think is quite

5           keeping up.  That was objection, form,

6           mischaracterizes, lacks foundation to your

7           previous question.

8    BY MR. ANAPOL:

9           Q.    Mr. O'Leary, does your agreement with

10   VirtaMove require them to -- I'm sorry, strike that.

11   Let me rephrase.

12                    Has Russ August agreed to reimburse

13   you for your travel expenses in this case?

14          A.    I believe so.

15          Q.    And how would you get from Midland to

16   Dallas conveniently?

17          A.    How would I get?  I'd look at what's

18   available for transportation and choose whatever

19   worked best.

20          Q.    Have you done that analysis yet?

21          A.    No, I've not done that analysis yet.

22          Q.    What is it that you plan to testify

10/7/2024              VirtaMove Corp. v. Amazon.com, Inc., et al.              Paul O'Leary

Page 38

```
 1   STATE OF NEW YORK              )
 2                                  ss:
 3   COUNTY OF WESTCHESTER          )
 4           I, EILEEN MULVENNA, CSR/RMR/CRR, a
 5   Certified Court Reporter, Registered Merit Reporter,
 6   Certified Realtime Reporter, and Notary Public in
 7   and for the State of New York, do hereby certify:
 8           That I reported the taking of the
 9   deposition of the witness, PAUL O'LEARY,
     commencing on the 7th day of October, 2024, at the
10   hour of 5:28 p.m.
             That prior to being examined, the witness
11   was duly sworn by me to testify to the truth, the
     whole truth, and nothing but the truth.
12           That I thereafter transcribed my said
     shorthand notes into typewriting and that the
13   typewritten transcript of said deposition is a
     complete, true and accurate transcription of my
14   said shorthand notes taken down at said time, and
     that a request has been made to review the
15   transcript.
             I further certify that I am not a relative
16   or employee of an attorney or counsel of any of the
     parties, nor a relative or employee of any attorney
17   or counsel involved in said action, nor a person
     financially interested in the action.
18           IN WITNESS WHEREOF, I have hereunto
     set my signature this 9th day of October, 2024.
19
20
21
22           EILEEN MULVENNA, CSR/RMR/CRR/RDR
```